UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD., and Fei Xie<br>      Plaintiffs,<br><br>   v.<br><br>Inner Mongolia Xiao Wei Yang USA, Inc., d/b/a, Xiao Wei Yang and/or Little Lamb Restaurant, Cheng Xu, and Yonghua Qin,<br><br>      Defendants. | Civil Action 15-cv-10114-DJC |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                                                       **December 14, 2015**

**I.    Introduction**

   Plaintiffs Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD. ("Xiao Wei Yang Catering-China") and Fei Xie ("Xie") (collectively, "Plaintiffs") have filed this lawsuit against Defendants Inner Mongolia Xiao Wei Yang USA, Inc., d/b/a Xiao Wei Yang and/or Little Lamb Restaurant ("Inner Mongolia USA"), Cheng Xu ("Xu") and Yonghua Qin ("Qin") (collectively, "Defendants") alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraudulent inducement (Count III), unjust enrichment (Count IV), trademark infringement (Count V), false designation of origin (Count VI), trademark dilution (Count VII), unfair competition (VIII) and unfair and deceptive trade practices (Count IX). D.1. Defendants have now moved to dismiss. D. 8. For the reasons stated below, the Court DENIES

1

the motion in part with prejudice (as to trademark claims) and in part without prejudice (as to the contract claims) and grants limited jurisdictional discovery regarding the forum selection clause.

## II.   Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled to credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (internal quotation marks and citation omitted).

## III.   Factual Background

The following allegations are drawn from the complaint, D.1, and are accepted as true for the purpose of the motion to dismiss.  Xiao Wei Yang Catering-China is one of the leading and best known restaurant chains, brand names and franchises in China.  D.1 ¶ 1.  Xie is a master and expert chef for the chain.  Id. ¶ 2.  Inner Mongolia USA is a Massachusetts corporation that operates the "Little Lamb Restaurant" located in Boston, Massachusetts.  Id. ¶ 3.  Xu, a resident of Massachusetts, is the president of Inner Mongolia USA.  Id. ¶ 4.  Qin, also a resident of Massachusetts, is the treasurer and secretary of Inner Mongolia USA.  Id. ¶ 5.  At all times

relevant to this lawsuit, Xu and Qin have been "*de facto* and/or legal spouses." Id. ¶ 6. Xu and Qin are also owners and principals of Little Lamb USA, LLC, a limited liability company organized under the laws of Massachusetts. Id.

In or about early 2011, Xu and Qin traveled to Xiao Wei Yang Catering-China's headquarters in Inner Mongolia to engage in negotiations on Xiao Wei Yang Catering-China's franchise, brand-name licensing and related business developments in the United States. Id. ¶ 11. The negotiations resulted in a contract, the Cooperation Agreement ("Cooperation Agreement"). Id. ¶ 12. Under the terms of the Cooperation Agreement, Xu and Qin incorporated Inner Mongolia USA. Id. ¶ 16.

During the negotiation of the Cooperation Agreement, Plaintiffs allege that Xu and Qin fraudulently represented themselves as making an arms-length transaction. Id. ¶ 13. They contend that Xu and Qin concealed material facts, including that they were married and were self-dealing in this matter. Id. Xu and Qin expressly denied Xiao Wei Yang Catering-China's inquiry on this issue. Id. ¶ 14. Xu and Qin allegedly used their misrepresentations to induce Xiao Wei Yang Catering-China to enter into the Cooperation Agreement. Id. ¶¶ 13-14. Xiao Wei Yang Catering-China would not have entered into the Cooperation Agreement had they not relied upon Xu and Qin's fraudulent representations and concealment of material facts. Id. ¶ 15.

In the process of incorporating Inner Mongolia USA, it is further alleged that Xu and Qin misappropriated Plaintiffs' brand-name, confidential and specialized knowledge. Id. ¶ 16. Xu and Qin conducted business as "Xiao Wei Yang and/or Little Lamb Restaurant at 326 Cambridge Street, Boston, Massachusetts," purportedly as Xiao Wei Yang Catering-China's first franchisee and/or brand-name restaurant in the United States. Id. Moreover, Plaintiffs alleged that

Defendants "violated and are in continuous violation of" their federal trademark registration and common law rights and other intellectual property rights. Id. ¶ 17.

Plaintiffs also contend that Defendants gained substantial business revenues, monies and profits as a purported franchisee, party to and/or beneficiary of the Cooperation Agreement with Xiao Wei Yang Catering-China. Id. ¶ 18. Pursuant to the Cooperation Agreement, Xiao Wei Yang Catering-China has transferred capital investment and monies to Defendants. Id. ¶ 19. Xiao Wei Yang Catering-China also sent Xie, its expert chef with specialized knowledge, to the United States to train and monitor Inner Mongolia USA's business and operations. Id. During Xie's stay in the United States, Defendants requested and obtained loans and other advances of operation expenses from Xie as a representative of Xiao Wei Yang Catering-China. Id. ¶ 20. Those loans and advances amounted to $66,125.88. Id. According to Plaintiffs, Defendants were thereby unjustly enriched. Id.

Plaintiffs further allege that Defendants also breached the Cooperation Agreement by unilaterally withdrawing Xie's U.S. visa sponsorship and/or its renewal. Id. ¶ 19. Defendants also allegedly exploited Xie's work, specialized knowledge and trade secrets while refusing to pay his compensation, accommodations, translation and transportation as required under Paragraph 11 of the Cooperation Agreement. Id. Defendants also failed to submit 50% franchise fees or applicable profits to Xiao Wei Yang Catering-China as required by the Cooperation Agreement. Id. ¶ 22.

### IV.    Procedural History

Plaintiffs instituted this action on January 16, 2015. D.1. Defendants have now moved to dismiss. D. 8. The Court heard the parties on the pending motion on October 14, 2015 and took the matter under advisement. D. 23.

## V.  Discussion

### A.  Whether the Forum Selection Clause Has Been Triggered

#### 1.  Forum Selection Clauses

"The prevailing view towards contractual forum-selection clauses is that 'such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.'" Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 386 (1st Cir. 2001) (quoting M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972)). The burden to establish that enforcement of the clause would be unreasonable and unjust belongs to the party resisting the forum selection clause. See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 48 (1st Cir. 2014).

The Court "treat[s] a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing Silva, 239 F.3d at 387, n.3). As such, the Court "accept[s] as true the well-pleaded factual allegations of the complaint, draw[s] all reasonable inferences therefrom in the plaintiff's favor, and determine[s] whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Id. (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998)). Generally, courts are limited to considering "only facts and documents that are part of or incorporated into the complaint." Id.  However, a court may consider the following: "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; . . . [and] documents sufficiently referred to in the complaint." Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.2001) (internal quotation marks and citation omitted).

Defendants attached a translation of the Cooperation Agreement, originally written in Chinese, and a Certificate of Translation as exhibits to their motion to dismiss. D. 9-1; 9-2. Although Plaintiffs raise certain challenges to a portion of the translation not material to this motion,[1] Plaintiffs do not dispute its authenticity and agree that "the Court may use Defendants' translation to resolve the present motion." D. 13 at 1 n.1; D. 24 at 8.

### 2. The Substance of the Forum Selection Clause

Paragraph 15 of the Cooperation Agreement states in relevant part:

> In the event of dispute, and arbitration or litigation is needed, the location shall be the place of registration of the Overseas Management Company.

Paragraph 2 of the Cooperation Agreement states:

> All 3 parties agreed to form and invest in a corporation in China. The name of the corporation to be formed shall be Inner Mongolia Xiao Wei Yang Catering Chain Overseas Management Company (*temporary name, actual name is subjected to registration*) (hereafter referred as "Overseas Management Company"). Party A will invest 15% of the corporate shares for its right to use the trademarks "LITTLE LAMB" and "HAPPY GRASSLAND"; Party B will hold 42%, Party C will hold 43%. Party A is responsible for registration issues of Overseas Management Company in China. Parties B and C are responsible for sharing the actual registered capital and registration fees. After registration of the Overseas Management Company, to ensure it operates properly, Parties B and C shall be responsible for the regular maintenance and annual renewal fees. Party A shall be responsible for any issues of annual renewal and taxation, as well as providing supporting directly or through the Overseas Management Company in China to Xiao Wei Yang USA Subsidiary.

D. 9-1 at 1-2, 5 (emphasis in original).

---

[1] Plaintiffs contend: "Defendants in this litigation matter attached an English-language translation of the Cooperation Agreement as an Exhibit to their Motion to Dismiss (D. 9-1); however, upon review, at least on the point of parent Company, Xiao Wei Yang – China's ownership, stock holding percentage and related terms, the purported translation is not clear or accurate." D. 14 at 1. As such, Plaintiffs' challenge to Defendants' translation of the Cooperation Agreement does not extend to Paragraph 15, which contains the forum selection clause.

Determining whether this forum selection clause is permissive or mandatory is "the threshold question." Claudio-De Leon, 775 F.3d at 46. Because the Cooperation Agreement uses the term "shall" to describe the parties' commitment to resolving any arbitration or litigation in "the place of registration of the Overseas Management Company," it is a mandatory clause. Id. (holding that the forum selection clause was mandatory because "it is axiomatic that the word 'shall' has a mandatory connotation").

### 3. Registration of Overseas Management Company Was a Condition Precedent to the Forum Selection Clause

"A condition precedent defines an event which must occur before an obligation to perform arises under a contract." Santana-Colon v. Houghton Mifflin Harcourt Pub. Co., 81 F. Supp. 3d 129, 138 (D.P.R. 2014) (citing Sands v. Ridefilm Corp., 212 F.3d 657, 661-62 (1st Cir. 2000). The plain language of the Cooperation Agreement supports the conclusion that registration was a condition precedent triggering the forum selection clause. D. 9-1 at 5. The forum selection clause does not identify a specific geographic location or point to a specific court or dispute resolution body. Instead, it rests on the fulfillment of the parties' obligation to register Overseas Management Company so that "the place of registration" with which the forum selection clause is concerned exists. Thus, based on the language of the Cooperation Agreement, the registration of the Overseas Management Company constitutes a condition precedent to the enforceability of the forum selection clause.

If the condition precedent has not been fulfilled, Plaintiffs will have met their burden of demonstrating that the forum selection clause was not triggered. See Knopick v. UBS Fin. Servs., Inc., 14-cv-05639, 2015 WL 1650070, at *4 (E.D. Pa. Apr. 14, 2015) (ruling that "[t]he language preceding the forum selection clause describes a condition precedent to its applicability" and explaining that "[t]he non-occurrence of this condition precedent renders the

7

forum selection clause inapplicable"); Visalus Inc. v. Bohn, No. 13-cv-10366, 2013 WL 1759420, at *3 (E.D. Mich. Apr. 24, 2013) (holding that the forum selection clause was not binding because "[a] condition precedent must be performed before a contract becomes binding"); see also Kemper Mortg., Inc. v. Russell, No. 3:06-cv-042, 2006 WL 355613, at *3 (S.D. Ohio Feb. 16, 2006) (declining to enforce or rewrite an arbitration clause that pointed to a location that did not exist); BP Marine Americas, a Div. of BP Expl. & Oil Corp.v. Geostar Shipping Co. N.V., 94-cv-2118, 1995 WL 131056, at *4 (E.D. La. Mar. 22, 1995) (denying motion to enforce forum selection clause because the clause described a court that did not exist).

### 4. Whether the Company Registered in China was the "Overseas Management Company"

Defendants assert that the "Overseas Management Company" referenced in the forum selection clause was registered in China on October 8, 2011. D. 17 at 2. According to Defendants, the name of the registered company is "Inner Mongolia Xiao Wei Yang Catering Chain Management Co., Ltd." Id. at 3. As to the name change, Defendants explain that "[t]he temporary name of the 'Overseas Management Company' referred to in Paragraph 2 of the Cooperation Agreement was amended from 'Inner Mongolia Xiao Wei Yang Catering Chain Overseas Management Company' to 'Inner Mongolia Xiao Wei Yang Catering Chain Management Co., Ltd.'" Id. at 3 n.1. Defendants have provided a certified translation of a Chinese business license reflecting that a company called "Inner Mongolia Xiao Wei Yang Catering Chain Management, Co., Ltd" was registered in China on October 8, 2011, D. 17-1 at 2, and rely on this document to contend that Inner Mongolia Xiao Wei Yang Catering Chain Management, Co., Ltd is the Overseas Management Company contemplated in the Cooperation Agreement. D. 17 at 2.

The Cooperation Agreement allows for a name change of the entity post-registration. D. 9-1 at 1. Thus, the fact that the entity Defendants identify has a name other than "Overseas Management Company" is not determinative. Nonetheless, the facts contained in the business license, D. 17-1 at 2, do not alone establish that Inner Mongolia Xiao Wei Yang Catering Chain Management, Co., Ltd is the Overseas Management Company contemplated by the Cooperation Agreement, an assertion that Plaintiffs hotly contest. D. 18 at 3. That is, the business license reflects that a company named the Inner Mongolia Xiao Wei Yang Catering Chain Management, Co., Ltd. was registered in China, but not necessarily that this company is the Overseas Management Company that meets the other elements enumerated in Paragraph 2 of the Cooperation Agreement, including, *inter alia*, sharing of the actual registered capital and registration fees, distribution of the regular maintenance and annual renewal fees and the specific division of shares. D. 18 at 3. Whatever relative responsibilities the parties bore regarding the registering of the Overseas Management Company, D. 9-1 at 1-2, there remains a factual dispute about the registration of same. Compare D. 18 at 3 (citing Yu affidavit) with D. 17 at 2-4, 6 (relying on business license and disputing Yu affidavit).

In light of these considerations, the Court cannot conclude with certainty that the corporation contemplated by Paragraph 2 of the Cooperation Agreement was registered. The Court denies the motion to dismiss without prejudice as to the contract related claims[2] and will allow limited jurisdictional discovery on this point. See Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003) (noting that "district court enjoys broad authority to order discovery, consider

---

[2] The contract related claims are count I (breach of contract), II (breach of the covenant of good faith and fear dealing), III (fraudulent inducement) and IV (unjust enrichment). Counts III and IV are "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract" and so they "should be heard in the forum selected by the contracting parties." Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction") (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)). The parties are permitted sixty days from this Order, until February 14, 2015, to conduct discovery regarding the formation and registration of the "Overseas Management Company" contemplated in the Cooperation Agreement. After the completion of such discovery, but no later than February 28, 2016, Defendants may file a renewed motion to dismiss as to this matter.

### B. The Trademark Claims Are Not Governed by the Forum Selection Clause

Since resolution of any renewed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) regarding the forum selection clause would have to address whether any non-contract based claims remain before the Court, the Court will now address the Fed. R. Civ. P. 12(b)(6) grounds to dismiss the trademark-related claims. As a preliminary matter, the Court concludes that the individual Plaintiff, Xie, has no plausible theory of recovery on the trademark infringement claim (count V), false designation of origin claim (count VI), state dilution claim (count VII), unfair competition claim (count VIII) and unfair and deceptive trade practices claim (count IX) because Plaintiffs allege that only Plaintiff "Xiao Wei Yang-China is the rightful owner of the Trademark." D.1 ¶¶ 46-47; see D. 24 at 23 (Defendants' argument at hearing regarding same). As such, those claims as raised by Xie are dismissed.

As to those same claims raised by Xiao Wei Yang Catering-China, they pose the question of whether such claims are subject to the forum selection clause. The parties agree that the First Circuit has not squarely addressed this question. D. 18 at 5; D. 24 at 21.

The Court finds the reasoning of the Second Circuit in Phillips v. Audio Active Ltd. to be instructive. Phillips, 494 F.3d 378, 391 (2d Cir. 2007). In that case, the court ruled that the plaintiff's copyright claims were not subject to a forum selection clause mandating that any

10

proceedings arising out of the contract were to be litigated in England. Id. at 393. The court reasoned that the copyright claims did not "originate from the recording contract" that contained the forum selection clause because the plaintiff did "not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work." Id. at 390. In the court's view, the plaintiff "ha[d] asserted no rights or duties under that contract" in the intellectual property claims. Id. at 391.

The substance of Xiao Wei Yang Catering-China's trademark-related claims is that Defendants have improperly used its trademark and in so doing violated multiple statutes (15 U.S.C. § 1114, 15 U.S.C. § 1125(a), Mass. Gen. Law c. 110H, Mass. Gen. Law c. 93A) and common law (unfair competition). D. 1 at 10-13. Like the plaintiff in Phillips, Xiao Wei Yang Catering-China "does not rely on the [Cooperation Agreement] to establish [its] ownership" of the trademark, but instead relies on its rights as a trademark holder. Phillips, 494 F.3d at 390; see Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A., 572 F.3d 86, 91 (2d Cir. 2009) (holding that forum selection clause did not apply to trademark claims because those claims "d[id] not sound in contract and [were] not based on rights originating from the licensing agreements"); Cheever v. Acad. Chicago Ltd., 685 F. Supp. 914, 916-17 (S.D.N.Y. 1988) (ruling that forum selection clause mandating that "contractual rights arising from th[e] agreement . . . clearly belong[] in Chicago" did not apply to copyright claims because those claims "[were] not a part of the publishing agreement"). At issue in Xiao Wei Yang Catering-China's trademark claims is the vindication of rights grounded in a federal statute, the Trademark Act. See e.g., Corcovado Music Corp. v. Hollis Music, Inc., 981 F.2d 679, 681 (2d Cir. 1993) (declining to subject copyright claims to the forum selection clause after adopting

plaintiff's position that "[w]hat [was] fundamentally at stake . . . [was] the vindication of rights under the Copyright Act, not the interpretation of a contract").

At most, the Cooperation Agreement is a defense to Xiao Wei Yang Catering-China's trademark claims. In Phillips, the defendants intended to raise the agreement there as a defense to the copyright claims. See Phillips, 494 F.3d at 391. The court did not consider that limited invocation of the agreement to constitute sufficient cause to conclude that the forum selection clause applied. See id. (explaining that "[b]ecause the recording contract is only relevant as a defense in this suit, we cannot say that Phillips' copyright claims originate from . . . the contract"). Similarly, in Pixel Enhancement Labs., Inc. v. McGee, a court in this district declined to transfer a theft of trade secret claim because, even though the defendant's "alleged misappropriation of [plaintiff's] trade secrets [might have] implicate[d] the License Agreement, it [did] so only by way of a . . . defense." Pixel, 97-cv-12283-RGS, 1998 WL 518187, at *3 (D. Mass. Aug. 5, 1998). For these reasons, Xiao Wei Yang Catering-China's trademark claims are not governed by the forum selection clause.

In support of their argument that forum selection clauses categorically capture intellectual property claims, Defendants rely upon Omron Healthcare, Inc. v. Maclaren Exps. Ltd., 28 F.3d 600 (7th Cir. 1994) and Warner & Swasey Co. v. Salvagnini Transferica S.p.A., 633 F. Supp. 1209 (W.D.N.Y.) aff'd, 806 F.2d 1045 (Fed. Cir. 1986). Omron is distinguishable, however, because it involved a distribution agreement and the particular trademark concerns that arise after a distribution agreement is terminated but one party retains a surplus of inventory that it no longer has the rights to sell. Omron, 28 F.3d at 601. Under those particular circumstances, the court ruled that the trademark claims "engage[d] both the parties' compact and the rules of trademark law" because the agreement dictated how the parties were supposed to dispose of

excess inventory. Id. at 602; see Payne v. N. Tool & Equip. Co., No. 2:13-cv-109 JD, 2013 WL 6019299, at *6 (N.D. Ind. Nov. 12, 2013) (holding that forum selection clause applied to contract claims but did not apply to trademark infringement claims and distinguishing Omron on the grounds that the Payne plaintiff alleged that the defendant was placing the plaintiff's trademark on products the defendant had manufactured). As the Second Circuit has explained, Warner is distinguishable from bona fide intellectual property claims because Warner involved "an action for breach of contract masquerading as patent infringement." Corcovado, 981 F.2d at 682. Accordingly, the motion to dismiss as to counts V, VI, VII, VIII and IX is denied.

### C. Xiao Wei Yang Catering-China Has Met the Heightened Pleading Standard for Fraudulent Inducement (Count III)

To raise a fraud claim, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." U.S. ex rel. Heineman-Guta v. Guidant Corp., 718 F.3d 28, 34 (1st Cir. 2013) (internal quotation marks and citations omitted); Fed. R. Civ. P. 9(b). The allegations "must specify 'the time, place, and content of an alleged false representation." Id. The heightened pleading requirement serves to "give notice to defendants of the plaintiffs' claim . . . and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

Xiao Wei Yang Catering-China has made sufficient allegations as to the fraudulent inducement claim (Count III). Xiao Wei Yang Catering-China alleges that Xu and Qin made the fraudulent statements. D. 1 ¶ 13. Xiao Wei Yang Catering-China specifies that the fraudulent statements included Defendants' failure to disclose that Xu and Qin were married and the misrepresentation that they were competing merchants. Id. ¶ 11, 13, 14. Xiao Wei Yang Catering-China alleges that the statements were made during the negotiation of the Cooperation Agreement, entered on July 6, 2011, which occurred at Xiao Wei Yang Catering-China's

headquarters in China.  Id. ¶ 11.  Plaintiffs allege that these negotiations occurred in or about early 2011, id., but presumably leading up to the July 6, 2011 contract.  Xiao Wei Yang Catering-China makes clear that it "would not have entered into the Cooperation Agreement in question except for its reliance upon Defendants' concealment of material facts and their fraudulent misrepresentations."  Id. ¶ 15.  Thus, dismissal of this claim on this ground is unwarranted.

### D.  The Complaint Satisfies the Amount in Controversy Requirement

In deciding whether the amount-in-controversy requirement for diversity jurisdiction is met on a motion to dismiss, the amount claimed by the plaintiff is controlling if it is made in "good faith."  Coventry Sewage Assocs. V. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995).  Dismissal requires "a legal certainty that the claim is really for less than the jurisdictional amount."  Spielman Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)).  Ordinarily, a plaintiff's general allegation of damages that satisfy the amount-in-controversy requirement is sufficient for jurisdiction.  See Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41-42 (1st Cir. 2012).  However, once the amount is challenged, the party invoking federal jurisdiction bears the burden of "alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount."  Spielman, 251 F.3d at 5 (internal quotations and citation omitted).

Defendants allege that this Court lacks subject matter jurisdiction over Xie's claims since he has not met the jurisdictional threshold of $75,000.  D. 9 at 11.  The Court, however, concludes that Xie has met the amount-in-controversy requirement.  Plaintiffs allege damages of $66,125.88 arising out of loans and advances that Xie made, as a representative of Plaintiff Xiao

Wei Yang China, to Defendants. D.1 ¶ 20. Defendants, relying on this $66,125.88 damage claim, argue that Plaintiff Xie has failed to meet the $75,000 amount-in-controversy requirement. D. 9 at 11-12. The $66,125.88 figure specific to Xie's loans and advances, however, is "not the sum total of the damage done to Mr. Xie, just the amount for that category of harm." D. 13 at 10. Plaintiffs also allege that Defendants "unilaterally withdrew Mr. Xie's U.S. visa sponsorship and/or its renewal, exploited his work as a master Chef, specialized knowledge and trade secrets, and . . . refused to pay . . . his 'compensation, accommodations, translation and transportation'" as agreed to within the Cooperation Agreement. D. 1 ¶ 19; see D. 1 at 13 (seeking not only actual and consequential damages, but punitive damages as well). In light of the small gap between the $66,125.88 pleaded for loans and advances and the $75,000 amount in controversy requirement and the allegations in the complaint regarding additional categories of damages that Xie has pled, the Court cannot rule that it is a "legal certainty that the claim is really for less than the jurisdictional amount." Coventry Sewage, 71 F.3d at 6.

Finally, Defendants assert that "the [c]omplaint fails to articulate which Plaintiff seeks remedies as to each count, and which Defendant is allegedly liable." D. 9 at 2. While the Court agrees that Plaintiffs' pleadings could be more specific, any lack of clarity in light of the entirety of the allegations in the complaint is not sufficient to warrant dismissal on this ground.

## VI.  Conclusion

For the foregoing reasons, the Court DENIES without prejudice Defendants' motion to dismiss as to counts I, II, III and IV. The Court permits a sixty-day period, until February 14, 2016, of limited jurisdictional discovery to resolve whether the corporation contemplated by Paragraph 2 of the Cooperation Agreement was formed and registered. The Defendants then have until February 28, 2016 to renew any motion to dismiss on this ground. The Court

DENIES with prejudice Defendants' motion to dismiss as to counts V, VI, VII, VIII and IX as they are raised by Xiao Wei Yang Catering-China.  The Court ALLOWS Defendants' motion to dismiss as to counts V, VI, VII, VIII and IX as they are raised by Xie.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge