## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                   )

|  |  |
|---|---|
| **XIAO WEI YANG CATERING LINKAGE IN INNER MONGOLIA CO. LTD et al.,** | ) |
| **Plaintiffs,** | ) |
| **v.** | )      **Civil Action 15-cv-10114-DJC** |
| **INNER MONGOLIA XIAO WEI YANG USA, INC. et al.,** | ) |
| **Defendants.** | ) |

_____

## MEMORANDUM AND ORDER

**CASPER, J.**                                                       **February 6, 2017**

## I.    Introduction

Plaintiffs Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD. ("Linkage") and Fei Xie ("Xie") (collectively, the "Plaintiffs") have filed this lawsuit against Defendants Inner Mongolia Xiao Wei Yang USA, Inc., d/b/a Xiao Wei Yang and/or Little Lamb Restaurant ("Xiao Wei USA"), Cheng Xu ("Xu") and Yonghua Qin ("Qin") (collectively, the "Defendants") alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraudulent inducement (Count III), unjust enrichment (Count IV), statutory and common law trademark infringement (Count V), false designation of origin under 15 U.S.C. § 1125(a) (Count VI), trademark dilution under Mass. Gen. L. c. 110H (Count VII), unfair competition (VIII) and unfair and deceptive trade practices under Mass. Gen. L. c. 93A (Count IX). D.1. The Defendants renewed their motion to dismiss Counts I, II, III and IV, on jurisdictional grounds, D. 63, after the

Court allowed jurisdictional discovery, and then moved for summary judgment as to those claims.

D. 73.  For the reasons stated below, the Court ALLOWS the motion, D. 63; D.73.

## II.      Standard of Review

The Court grants a motion for summary judgment when there is no genuine dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the Court "must scrutinize the record in the light most favorable to the summary judgment [opponent]."  Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005) (citing Houlton Citizens' Coal v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999)).

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Although the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor," Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citing Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 84 (1st Cir. 2008)), "conclusory allegations, improbable inferences, and unsupported speculation" proffered by the non-movant are insufficient to create a genuine issue of material fact to survive summary judgment.  Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (quoting Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008)).

## III.     Factual Background

The background facts of this case were previously laid out in the Court's December 14, 2015 Order, D. 26, addressing the Defendants' initial motion to dismiss and the Court incorporates that background, by reference, here.  Thus, for present purposes, the Court only recounts facts

relevant to the forum-selection clause at issue. Unless otherwise noted, the facts below are undisputed.

In or about early 2011, Xu and Qin, residents of Massachusetts, traveled to Xiao Wei Yang Catering Linkage in Inner Mongolia Co., Ltd.'s ("Linkage") headquarters in Inner Mongolia to engage in negotiations regarding Linkage's franchise. D. 75 ¶ 6. Linkage is one of the leading and best known restaurant chains in China and the Defendants were interested in discussing opportunities to license Linkage's brand name, as well as negotiate related business developments that could bring Linkage restaurants to the United States. Id. ¶¶ 1, 6. The negotiations resulted in a contract, the Cooperation Agreement, Contract No.: XWYOS/001/20110706 ("Cooperation Agreement"). Id. ¶ 9. According to the Cooperation Agreement, all parties agreed to form and invest in a corporation in China called the Inner Mongolia Xiao Wei Yang Catering Chain Overseas Management Company (the "Overseas Management Company"). D. 76-1 ¶ 2. The Cooperation Agreement noted, however, that the corporation's name was a "temporary name," with "actual name . . . subjected [sic] to registration." Id. The Cooperation Agreement also contemplated the formation of a new corporation in the United States that would be registered as a subsidiary of Linkage ("Xiao Wei USA"). Id. Within one year of the formation of both Xiao Wei USA and the Overseas Management Company, Linkage also agreed to transfer its entire interest in Xiao Wei USA to the Overseas Management Company. Id. ¶ 3. This, in effect, would result in Xiao Wei USA being wholly owned by the Overseas Management Company in China. Id. Additionally, under the Cooperation Agreement, any arbitration or litigation resulting from a dispute over the contract would be "the place of registration" of the Overseas Management Company. Id. ¶ 15.

On or about October 8, 2011, a limited liability company called Inner Mongolia Xiao Wei Yang Catering Chain Management, Co., Ltd. ("Catering Chain Management"), located at Floor 6, Xiao Wei Yang Plaza, No. 77, Wenhua Road, Qingshan District, Baotou City, was formed and registered in China. D. 76-2 at 1. According to a foreign investment census, the corporate shares of Catering Chain Management were held by Qin, Xu and Inner Mongolia Xiao Wei Yang Stock Raising Science & Technologies Co., Ltd., with the parties holding 43%, 42% and 15% of the shares, respectively. D. 65-12 at 4. The first and only shareholders meeting of Catering Chain Management took place in September 2012 and was attended by Xu, Qin and a representative of Linkage, Jiarong Yu ("Yu"). D. 65-6. At the meeting, Yu discussed the need to transfer Linkage's stock holdings in Xiao Wei USA from Linkage to Catering Chain Management. Id. at 3. The shareholders passed a resolution agreeing to this transfer. D. 65-7. The foreign investment census, which shows that, as of 2013, Catering Chain Management held 100% of Xiao Wei USA's stock, confirms the transfer took place. D. 65-12 at 2.

## IV.    Procedural History

Plaintiffs instituted this action on January 16, 2015. D.1. The Defendants originally moved to dismiss all counts. D. 8. The Court heard the parties on that motion, D. 23, and denied the motion to dismiss without prejudice as to Counts I, II, III and IV (the "contract claims"). D. 26. As to the contract claims, the Court was unable to determine at that time whether the forum-selection clause had been triggered. Id. As a result, the Court granted limited discovery on the forum-selection clause issue and also noted that it would permit the Defendants to file for a renewed motion to dismiss once this discovery had been completed. Id. The Defendants subsequently filed a renewed motion to dismiss the contract claims. D. 63, 65, 66. The Court heard the parties on the motion. D. 70. At that hearing, and for the reasons discussed below, the

Court informed the parties that it would be treating the motion to dismiss as a motion for summary judgment and invited supplemental briefing. The Defendants subsequently filed a motion for summary judgment, which supplemented the original motion to dismiss. D. 73.

## V. Discussion

### A. Rule 12(b)(6) is the Procedural Mechanism for Addressing a Forum-Selection Clause

"In this Circuit, 'we treat a motion to dismiss based on a forum-selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6).'" Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014) (quoting Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009)). While some circuits viewed forum-selection clauses as abdicating the jurisdictional authority of the district court, see Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (9th Cir. 2003) (noting that a forum-selection clause "foreclose[s] suit in the jurisdiction of plaintiff's choice" (alteration in original) (quoting New Moon Shipping Co. v. Man B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997))), the First Circuit maintains an analytical framework that rejected that notion. See Silva v. Encyc. Britannica Inc., 239 F.3d 385, 388 n.6 (1st Cir. 2001) (noting that "even a mandatory forum-selection clause does not in fact divest a court of jurisdiction that it otherwise retains . . . [r]ather, '[the clause] merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction'" (second alteration in original) (quoting LFC Lessors, 739 F.2d at 6)).

In Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas, 134 S. Ct. 568 (2013), the Supreme Court stated that in general, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." Id. at 581. The Court explicitly ruled out dismissal based on venue under

"§ 1406(a) and Rule 12(b)(3) [as not being] proper mechanisms to enforce a forum-selection clause," and held instead "that § 1404(a) and the forum *non conveniens* doctrine provide appropriate enforcement mechanisms." Id. at 580. The Supreme Court, however, also included a caveat that is relevant to the approach utilized by this Circuit:

> [a]n *amicus* before the Court argues that a defendant in a breach-of-contract action should be able to obtain dismissal under Rule 12(b)(6) if the plaintiff files suit in a district other than the one specified in a valid forum-selection clause. . . . Petitioner, however, did not file a motion under Rule 12(b)(6), and the parties did not brief the Rule's application to this case at any stage of this litigation. We therefore will not consider it.

Id. (citation omitted). In a footnote, the Supreme Court observed, however, that:

> a motion under Rule 12(b)(6), unlike a motion under § 1404(a) or the *forum non conveniens* doctrine, may lead to a jury trial on venue if issues of material fact relating to the validity of the forum-selection clause arise. Even if [the amicus] is ultimately correct, therefore, defendants would have sensible reasons to invoke § 1404(a) or the forum *non conveniens* doctrine in addition to Rule 12(b)(6).

Id. at n.4.

Here, Defendants did not move for dismissal under § 1404(a) or the *forum non conveniens* doctrine. Rather, they moved to dismiss under Rule 12(b)(6). D. 63. While the First Circuit has reaffirmed the applicability of Rule 12(b)(6) in this context, Claudio-De León, 775 F.3d at 46 n.3 (citing Atlantic Marine Constr. Co., 134 S.Ct. at 579-80 and noting that "absent a clear statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit, and we will not decline to review or enforce a valid forum selection clause simply because a defendant brought a motion under 12(b)(6) as opposed to under § 1404 or *forum non conveniens*"), there is a procedural consequence to bringing a motion solely under that rule.

Namely, while a court generally "enjoys broad authority to . . . consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction," Skwira v. United States,

344 F.3d 64, 72 (1st Cir. 2003) (quoting <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001)), it may not do so where the procedural mechanism used to bring effect to a forum-selection clause is Rule 12(b)(6).  In other words, while a jurisdictional inquiry "permits (indeed, demands) differential factfinding" by the district court, <u>Valentin</u>, 254 F.3d at 363, a Rule 12(b)(6) motion expressly forecloses it.  <u>See, e.g.</u>, <u>Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.</u>, 809 F. Supp. 1306, 1309 (S.D. Ohio 1993) (noting that "if the enforceability of the clause is a matter to be considered under Rule 12(b)(6), then the court, upon the submission of evidentiary materials outside the pleadings, must employ the standards applicable to a summary judgment motion under Fed. R. Civ. P. 56").

Here, because resolution of the issue before the Court depends upon the Court's consideration of matters outside the pleadings, the Court converts the motion to dismiss to a motion for summary judgment to consider that material.  Under Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); <u>see Nales v. Carnival Corp.</u>, No. 11-cv-1526-JAF, 2012 WL 1854242, at *1 (D.P.R. May 21, 2012) (noting that because "Federal Rule of Civil Procedure 12(b)(6) provides the proper vehicle for a motion to dismiss based on a forum-selection clause . . . "if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment" (citation omitted) (quoting <u>Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008))).  Pursuant to Fed. R. Civ. P. 12(d), the Court informed the parties at oral argument of its intention to convert the motion to a summary judgment motion on the forum-selection clause issue.  The parties then filed Rule 56.1 statements and

additional briefing. D. 73, 74, 75, 76, 79, 80. Accordingly, the Court now treats Defendants' Rule 12(b)(6) motion as one for summary judgment under Rule 56.

**B.**     <u>The Forum-Selection Clause Is in Effect and Dismissal Of the Contract Claims Is Warranted</u>

When this Court first addressed whether the Cooperation Agreement's forum-selection clause had been triggered, D. 26, several uncertainties precluded resolution of the matter. The forum-selection clause itself was clear: "[i]n the event of dispute, and arbitration or litigation is needed, the location shall be the place of registration of the Overseas Management Company." D. 76-1 at 5. But, as this Court indicated, "[t]he plain language of the Cooperation Agreement supports the conclusion that registration [of the Overseas Management Company] [is] a condition precedent triggering the forum-selection clause . . . [i]t rests on the fulfillment of the parties' obligation to register Overseas Management Company so that 'the place of registration' with which the forum-selection clause is concerned exists." <u>Xiao Wei Yang Catering Linkage in Inner Mongolia Co. v. Inner Mongolia Xiao Wei Yang USA, Inc.</u>, 150 F. Supp. 3d 71, 77 (D. Mass. 2015). Without a finding that the Overseas Management Company having been registered, the forum-selection clause was functionally meaningless. <u>See</u> <u>Knopick v. UBS Fin. Servs., Inc.</u>, No. 14-cv-05639, 2015 WL 1650070, at *4 (E.D. Pa. Apr. 14, 2015) (citing <u>Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.</u>, 739 A.2d 133, 139 (Pa. 1999); <u>Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.</u>, 660 N.E.2d 415, 418 (N.Y. 1995))) (ruling that "[t]he language preceding the forum selection clause describes a condition precedent to its applicability" and explaining that "[t]he non-occurrence of this condition precedent renders the forum-selection clause inapplicable"). But the Court was initially unable to make a determination regarding the Overseas Management Company's registration status based upon only a Chinese business license for a

company with a name that did not match the name of the Overseas Management Company in the Cooperation Agreement. The Court explained:

> [T]he facts contained in the business license do not alone establish that Inner Mongolia Xiao Wei Yang Catering Chain Management, Co., Ltd is the Overseas Management Company contemplated by the Cooperation Agreement, an assertion that Plaintiffs hotly contest. That is, the business license reflects that a company named the Inner Mongolia Xiao Wei Yang Catering Chain Management, Co., Ltd. was registered in China, but not necessarily that this company is the Overseas Management Company that meets the other elements enumerated in Paragraph 2 of the Cooperation Agreement, including, inter alia, sharing of the actual registered capital and registration fees, distribution of the regular maintenance and annual renewal fees and the specific division of shares. Whatever relative responsibilities the parties bore regarding the registering of the Overseas Management Company there remains a factual dispute about the registration of same.

Xiao Wei Yang Catering Linkage, 150 F. Supp. 3d at 78. That is, the Cooperation Agreement outlined several specific attributes that would be possessed by the Overseas Management Company and the Court could not glean from the limited record before it then whether the company that Defendants had claimed was the Overseas Management Company possessed those particular attributes. The Court was focused upon the elements enumerated in Paragraph 2 of the Cooperation Agreement:

> All 3 parties agreed to form and invest in a corporation in China. The name of the corporation to be formed shall be Inner Mongolia Xiao Wei Yang Catering Chain Overseas Management Company *(temporary name, actual name is subjected to registration is subjected to registration)* (hereafter referred as "Overseas Management Company"). Party A [Linkage] will invest 15% of the corporate shares for its right to use the trademarks "LITTLE LAMB" and "HAPPY GRASSLAND"; Party B [Xu] will hold 42%, Party C will hold 43% [Qi]. Party A is responsible for registration issues of Overseas Management Company in China. Parties B and C are responsible for sharing the actual registration capital and registration fees. After registration of the Overseas Management Company, to ensure it operates properly, Parties B and C shall be responsible for the regular maintenance and annual renewal fees. Party A shall be responsible for any issues of annual renewal and taxation, as well as providing supporting [sic] directly or through the Overseas Management Company in China to Xiao Wei Yang USA subsidiary.

D. 76-1 at 1-2.

Now, with the benefit of additional briefing and having had the opportunity to consider the undisputed facts, the Court can address the elements outlined in the Cooperation Agreement and decide based on those elements whether Catering Chain Management is in fact the Overseas Management Company discussed in the Cooperation Agreement. First, the Cooperation Agreement was exacting in its articulation of how the shares of the Overseas Management Company would be held: Linkage would hold 15%, Xu would hold 42% and Qi would hold 43%. D. 76-1 at 2. Defendants have submitted screenshots from a publicly accessible database run by the State Administration for Industry and Commerce of the People's Republic of China that shows a company profile of Catering Chain Management with the precise 15%-42%-43% shareholder distribution anticipated by the Cooperation Agreement. D. 65 ¶ 18; D. 65-13. Linkage attempts to argue that the document is inadmissible as unauthenticated under Fed. R. Evid. 902. D. 79 at 13. That is, the documents cannot be considered by the Court because they are not the type of self-authenticating documents that fall within Rule 902's umbrella. Linkage also contends that the screenshots are hearsay. Id. Even if a "foreign public document" does not meant the requirements of a self-authenticating document under Fed. R. Evid. 902(3), it may still be authenticated under Fed. R. Evid. 901. See Minh Tu v. Mutual Life Ins. Co. of N.Y., 136 F.3d 77, 81 (1st Cir. 1998) (distinguishing authentication pursuant to Rule 901 from self-authentication pursuant to Rule 902). Under Rule 901(b)(4), a document satisfies the authentication requirement if the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" support a finding that the evidence is what the proponent claims it to be. Fed. R. Evid. 901(b)(4). Here, the screenshots come from a website bearing the standard ".gov.cn" domain used by the Chinese Central Government's official web portal, a fact of which

the Court may take judicial notice. <u>See</u> Fed. R. Evid. 201(b)(2).[1] Furthermore, the website states that it is run by the State Administration for Industry and Commerce of the People's Republic of China. D. 65-13 at 2. The information presented in the database—including shareholder investment information, foreign investment information and enterprise asset status—is of the type one would expect to find on a public government database. Given the substance and internal patterns of these specific attributes of the website screenshots, the Court concludes they may be properly authenticated pursuant to the standard under Rule 901. Furthermore, for similar reasons, they fall within hearsay exceptions. <u>See</u> Fed. R. Evid. 803(6), (8). Consequently, the Court may consider the evidence showing a Chinese government database displaying Catering Chain Management's shareholder breakdown that matches the Cooperation Agreement's contemplation of the Overseas Management Company's division of shares.[2]

Second, the Cooperation Agreement stated that Xu and Qin would be responsible for the regular maintenance and annual renewal fees of the Overseas Management Company. They have submitted two documents purporting to demonstrate their payment of these fees. One document consists of receipts sent by Linkage's accountant to Qin, which shows a payment on behalf of Catering Chain Management of RMB 800.00 for a "[r]enewal [f]ee" and a payment of RMB 50.00

---

[1] The website, whose heading bears the title "National Enterprise Credit Information Public Disclosure System," can be found at gsxt.saic.gov.cn.

[2] The Defendants also point the Court to a certified translation of a document titled Foreign Investment Census, D. 65 ¶ 17, which shows the same 15%-42%-43% shareholder distribution contemplated by the Cooperation Agreement, and that Defendant Qin declares under penalty of perjury was sent to her by an employee of Linkage. D. 65-12. While Linkage again argues that the document is unauthenticated hearsay, the Court notes that whatever the merits of Linkage's argument, it would reach the same conclusion regardless of whether the document were considered. Nonetheless, the Court finds that the document is not hearsay as it is at least arguably the statement of a party opponent (Linkage) as it was sent, in its substantially completed form, to Defendants by Linkage for completion. D. 65 ¶ 17. Moreover, for the reasons addressed above, the document may be authenticated under Fed. R. Evid. 901(b)(4).

for "[d]omestic enterprise annual renewal." D. 65-10 at 2-3. Both payments were made in June 2012. Id. Plaintiffs argue that consideration of these receipts by the Court would be improper. D. 67 at 7; D. 79 at 13. They maintain that that the receipts are unofficial, freely available, non-governmental receipts. Id. But Defendants have also submitted Catering Chain Management's November 2012 financial report, consisting of a spreadsheet detailing the company's capital and expenses. D. 65-11. This spreadsheet, which was sent in an e-mail from Linkage's accountant, Xuemin Wu, to Qin, shows a June 2012 line item entitled "[a]nnual renewal fees" for a total of RMB 850.00, the exact amount accounted for in the receipts. Id. at 7.

Additionally, other evidence supports the claim that Catering Chain Management is the Overseas Management Company contemplated in the Cooperation Agreement. Paragraph 3 of the Cooperation Agreement reads as follows:

> Within one year from the formation of Xiao Wei Yang USA subsidiary and Overseas Management Company, above 3 parties agreed that Linkage shall transfer its entire right interest in Xiao Wei Yang USA subsidiary to Overseas Management Company. Thereafter, Xiao Wei Yang USA subsidiary shall be a wholly owned subsidiary of Overseas Management Company (in China). Thereafter, Parties A, B, C's share percentages shall remain the same, which are: 15%, 42%, and 43% respectively.

D. 76-1 at 2. That is, the Cooperation Agreement anticipated that Linkage would transfer all of the shares it held in Xiao Wei USA to the Overseas Management Company within one year of the Overseas Management Company's formation. On September 13, 2013, Catering Chain Management held its first and only shareholder meeting in Flushing, New York. D. 65-6. Xu, Qin and Yu—the legal representative of Linkage—attended this meeting. Id. According to the minutes of this meeting, Yu stated, "It is not so easy for me to come here, so today let us start the first board meeting, sign the board resolution, and transfer the US company to the management company according to the agreement to avoid affecting the catering linkage company." Id. at 2. Linkage

argues that the minutes cannot be considered because they were not admitted to, authenticated or properly certified. D. 79 at 11. Even without considering these minutes, the Court would reach the same conclusion. Indeed, according to an undisputed business record entitled "Shareholder Resolution," the Catering Chain Management shareholders did, in fact, pass a resolution agreeing to transfer "100% of the 'Xiao Wei Yang US Subsidiary' shares held by [Linkage] to [Catering Chain Management]," just as the Cooperation Agreement anticipated. D. 65-7. And the foreign investment census that Linkage sent to Defendants shows that as of 2013 Catering Chain Management held 100% of Xiao Wei USA's stock, thereby confirming the transfer took place.[3] D. 65-12 at 2.

Lastly, the Court recognizes that the Cooperation Agreement expected Qi and Xu to provide the registration capital and registration fees for the Overseas Management Company. D. 76-1 at 1. The Defendants state that the contemplated investment of capital was approximately $400,000 (or about RMB 2,650,000). D. 64 at 5; D. 67 at 6. Although the Plaintiffs dispute that such capitalization was provided, D. 79-1 ¶ 20; D. 67 at 6; D. 79 at 3-5, they do not point to specific admissible facts in their summary judgment papers to do so.

Taken together, the undisputed facts here show that Catering Chain Management and the Overseas Management Company outlined in the Cooperation Agreement are one and the same. Maintenance and annual renewal fees for Catering Chain Management were paid by Defendants, as was contemplated by the Cooperation Agreement. One hundred percent of the U.S. subsidiary was transferred to Catering Chain Management, as was contemplated by the Cooperation

---

[3] The document presented is a foreign investment census filled out by representatives of Catering Chain Management. The document has a section entitled "Company Profile" under which Xiao Wei USA is listed. The total stock information of Xiao Wei USA is laid out—a total of 40,000 stocks were issued—and it is noted that Catering Chain Management holds all 40,000 of the stock issued. D. 65-12 at 2.

Agreement. And, notably, the 15%-42%-43% breakdown of Catering Chain Management shareholdings among Linkage, Xu and Qi is precisely what was called for in the Cooperation Agreement. Consequently, the Court concludes that the Overseas Management Company referenced in the Cooperation Agreement is Catering Chain Management.[4] Because "[t]he prevailing view towards contractual forum-selection clauses is that 'such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances,'" Silva, 239 F.3d at 386 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)), the Court declines to exercise its jurisdiction over the contract claims at issue here and, instead, affords the forum-selection clause its due weight. Any litigation involving Counts I, II, III and IV must take place in China. Accordingly, the contract claims are DISMISSED.[5]

## VI.    Conclusion

---

[4] Plaintiffs argue that the Court is precluded from making this determination because language in the Cooperation Agreement states that "[t]he name of the corporation to be formed shall be Inner Mongolia Xiao Wei Yang Catering Chain Overseas Management Company." D. 79 at 5-8; D. 76-1 at 1. However, immediately following the contractual phrase in question, the Cooperation Agreement includes a parenthetical that states, "*(temporary name, actual name is subjected to registration)*." D. 76-1 at 1. That is, the agreement anticipated that the actual name of the Overseas Management Company would likely change upon registration.

Plaintiffs also argue that the Defendants should be precluded in their summary judgment motion from relying upon documents not produced during discovery. D. 79 at 7-9. In reaching its conclusion here, the Court relied upon only one document identified by Plaintiffs as not being produced during jurisdictional discovery, namely the Catering Chain Management's business license. D. 76-2. That document, however, was attached to the Defendants' initial motion to dismiss reply brief, D. 17-1, so it is difficult to discern any lack of notice or prejudice to the Plaintiffs in considering it.

[5] To the extent that the Defendants seek to dismiss the other counts of the complaint "based on Plaintiffs' misconduct," D. 64 at 9, and seek attorneys' fees against the Plaintiffs, D. 64 at 8-9, the Court, in its discretion, denies such relief.

For the foregoing reasons, the Court ALLOWS Defendants' motion and Counts I, II, III and IV are hereby DISMISSED.  D. 63; D. 73.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge