UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-10114-DJC

XIAO WEI CATERING LINKAGE
IN INNER MONGOLIA CO. LTD.,
AND FEI XIE,
    Plaintiffs, and Defendants-in-Counterclaim,

v.

INNER MONGOLIA XIAO WEI YANG
USA, INC., d/b/a XIAO WEI YANG
AND/OR LITTLE LAMB RESTAURANT,
CHENG XU, AND YONGHUA QIN,
    Defendants, and Plaintiffs-in-Counterclaim.

## ORDER ON DEFENDANTS' MOTION FOR SANCTIONS (#129).

KELLEY, U.S.M.J.

### I. Introduction.

This case involves an agreement gone awry between a hot-pot restaurant chain headquartered in China, and the owners of a restaurant in Boston, Massachusetts, who tried to become a franchisee of the Chinese company. The suit has been marked by frequent, acrimonious discovery disputes, which in large part have been caused by plaintiffs' failure to follow the rules of discovery. In this Order, the court finds that under 28 U.S.C. § 1927, plaintiffs' counsel, Attorney Frank Xu, admitted to this court *pro hac vice* from New York, should pay reasonable attorneys' fees and costs to defendants' counsel for their work on a motion for a protective order and to quash subpoenas issued by plaintiffs. The court further orders under its inherent authority that Attorney Xu should be formally sanctioned for

gratuitously accusing defendant's counsel, Attorney Elizabeth Brady Murillo, of fabricating documents.

The facts of this case are described in detail in Judge Casper's Order on defendants' motion for summary judgment, in which she dismissed counts I-IV of the nine-count complaint. (#81 at 2-4, 15.)[1] The facts are repeated here in abbreviated form. Plaintiffs, Xiao Wei Catering Linkage in Inner Mongolia Co., Ltd. (Linkage), and Fei Xie, a chef employed by Linkage, brought suit against defendants Inner Mongolia Xiao Wei Yang USA, Inc. (Inner Mongolia), and two individuals, Cheng Xu and Yonghua Qin. (#1.) Plaintiff Linkage is a large, well-known restaurant chain in China; defendant Inner Mongolia is a Massachusetts corporation that operated a restaurant in Boston, Massachusetts called the "Little Lamb Restaurant." (#1 ¶¶ 1-3; #90 at 10.) Defendants Xu and Qin are married, live in Massachusetts, and are president and treasurer of Inner Mongolia, respectively. *Id*. ¶¶ 4-6.

In 2011, Xu and Qin traveled to China and negotiated a Cooperation Agreement with Linkage so that they could become Linkage's first franchisee in the United States. *Id.* ¶¶ 11-12. The complaint alleges that Xu and Qin fraudulently represented themselves to Linkage, concealed material facts, and so induced Linkage to enter into the Cooperation Agreement, which Linkage would not have done but for Xu and Qin's misrepresentations.[2] *Id.* ¶¶ 13-15. Xu

---

[1] Judge Casper allowed the defendants' motion for summary judgment on Counts I-IV because those claims, (breach of contract, Count I, breach of the implied covenant of good faith and fair dealing, Count II, fraudulent inducement, Count III, and unjust enrichment, Count IV), were subject to a forum selection clause in the Cooperation Agreement between the parties and thus any litigation involving those claims must take place in China. (#81 at 14.) She further allowed defendants' motion to dismiss Counts V-IX, (statutory and common law trademark infringement, Count V, false designation of origin under 15 U.S.C. § 1125(a), Count VI, trademark dilution under Mass. Gen. L. c. 110H, Count VII, unfair competition, Count VIII, and unfair and deceptive trade practices under Mass. Gen. L. c. 93A, Count IX), to the extent that they were raised by plaintiff Fei Xie. (#26 at 16.)

[2] The complaint alleges that the misrepresentation Xu and Quin made was that they were "unrelated and competing merchants, when, in fact, they were spouses." *Id*. at 1.

and Qin are also alleged to have misappropriated Linkage's brand-name and confidential knowledge, and are said to have violated Linkage's federal trademark registration and other intellectual property rights. *Id*. ¶¶ 16-17.

Plaintiffs allege that defendants breached the Cooperation Agreement by withdrawing visa sponsorship for Xie, the chef Linkage sent to work with Xu and Qin, and exploited Xie's specialized knowledge and trade secrets while refusing to pay for his expenses as the Cooperation Agreement required them to do. *Id*. ¶ 19.

Finally, plaintiffs claim that defendants gained business revenues as a franchisee, but did not pay franchise fees as the Cooperation Agreement provided. *Id*. ¶¶ 18, 22. Pursuant to the Agreement, Linkage transferred capital and money to defendants, including loans totaling approximately $66,000. *Id*. ¶ 20.

## II. Facts.

Plaintiffs in this case have repeatedly failed to comply with the rules of discovery. When defendants object to plaintiffs' actions in motions filed with the court, counsel for plaintiffs responds by filing counter-motions accusing defendants of wrongdoing and asking the court to impose sanctions on the defendants. *See, e.g.,* ##94-95 (defendants' motion to dismiss for plaintiff's flagrant disregard for rules of discovery); #98 (plaintiffs' opposition); ##101-103 (plaintiffs' motion to compel and for sanctions against defendants). While the court will not detail every instance of this history, brief descriptions of two prior discovery disputes in the case are instructive and provide a backdrop for the court's decision on this matter.

A. <u>The Discovery Dispute of March 2016</u>.

Early in the case, Judge Casper gave the parties sixty days in which to conduct discovery as to whether the forum selection clause in the Cooperation Agreement had been triggered. (#26.) In March 2016, the parties had a discovery dispute during the limited discovery period.[3] In their motion to compel, defendants complained that plaintiffs had produced unsigned, incomplete, and inadequate responses to defendants' discovery requests, which was particularly prejudicial given the fast-approaching deadline. (#32, #33 at 3, 5.) In addition, plaintiffs had refused to produce a corporate designee for a Rule 30(b)(6) deposition notice sent to plaintiffs. (#32 at 2.) Defendants' counsel had attempted to confer with Attorney Xu, but he did not respond. *Id.* at 3.

---

[3] The facts surrounding the forum selection clause dispute, while not the focus of the court's order here, are relevant to the extent that they suggest the beginnings of a pattern of obfuscation, if not outright deceit, on the part of plaintiffs. As noted *supra,* n.1, the Cooperation Agreement contained a forum selection clause that required the contract claims to be litigated in China. (#26 at 6.) Plaintiffs argued that the Cooperation Agreement was not in force because the Overseas Management Company referenced in the agreement had never been registered. (#13 at 2.) In support of their argument that the company was never registered, plaintiffs relied on the affidavit of Jiarong Yu, Chairman of the Board of Directors of Linkage. *Id*. at 6-7, citing the affidavit, #14. Yu swore that the Overseas Management Company had never been formed because Xu and Qin never fulfilled certain responsibilities, such as paying the registration fees and renewal fees for the company in China. *Id*. at 2. He further asserted that the corporate registration statement of Inner Mongolia submitted by the defendants "is FALSE." *Id*. As mentioned above, Judge Casper ordered a limited period of discovery to determine whether conditions precedent to the application of the forum selection clause had occurred. (#26.) Her subsequent Order allowing defendants' motion for summary judgment set out the uncontroverted evidence supporting her conclusion that, in fact, the Overseas Management Company had been formed and the forum selection clause thus was in force. (#81.) The evidence on which Judge Casper relied directly contradicts the sworn statement of Jiarong Yu, *see, e.g*., *id.* at 10-13 (listing the conditions set out in the Cooperation Agreement and the evidence proffered by defendants to show that those conditions were met); *see also* #18 at 3 (plaintiffs' sur-reply to defendants' motion to dismiss, arguing that facts that Judge Casper eventually found were true were "hotly disputed"). For example, one of the "facts" at issue, whether the division of shares of the company formed lined up with the percentages required by the Cooperation Agreement, was, as Judge Casper found, publicly available in China, *see* #81 at 10, and should not have been difficult for plaintiffs to discover. Nevertheless plaintiffs strenuously argued those facts were not true. *See* #18 at 3, "Finally, as Mr. Yu's declaration establishes, the division of shares does not line up with the percentages required by the Cooperation Agreement."

In response, plaintiffs filed a motion for protective order to prevent defendants from noticing a deposition of the Rule 30(b)(6) witness who needed to travel to Boston from China for the deposition (##34-35), and also filed an opposition to defendants' motion to compel discovery, stating that because discovery at that stage of the case was confined to the jurisdictional question, they had "no relevant and responsive materials to produce" to defendants. (#37 at 2.)

Defendants responded that with regard to the Rule 30(b)(6) witness, since plaintiffs elected to sue in Massachusetts, the deposition should take place here. (#39 at 2.) Defendants also described in detail their attempts to engage in discovery practice and plaintiffs' repeated dilatory and conflicting responses to defendants' efforts, *see id.* at 2-5.

At a hearing on defendants' motion in April 2016, plaintiffs abandoned their argument that they need not engage in discovery practice and agreed to give defendants discovery. (#52.) The court found that defendants had properly noticed the deposition of the Rule 30(b)(6) witness to take place in Boston, and ordered that the deposition take place within the next sixty days. *Id*.

B.  The May 2016 Discovery Dispute.

In May 2016, defendants filed an emergency motion to quash a third-party subpoena issued by plaintiffs. (#54.) Plaintiffs had issued a subpoena to defendants' non-party accountant. *Id*. at 2. Defendants correctly asserted that the subpoena requested information that was outside the scope of the limited discovery Judge Casper had ordered; plaintiffs had not yet complied with automatic disclosure requirements; the subpoena was served in violation of Fed. R. Civ. P. 45(a)(4) because defendants were not served with a notice of the subpoena; the subpoena was in violation of Fed. R. Civ. P. 45(c)(2) because it was beyond the geographical scope permitted; and the time given to comply, seven days, was unreasonable. *Id*. at 2-3.

5

At a hearing on the motion on May 27, 2016, the court quashed the subpoena because of the plaintiffs' failure to comply with Fed. R. Civ. P. 45. (#59.)

C. The Present Discovery Dispute.

The matter presently before the court began in December 2017, when defendants filed a motion to quash seven subpoenas that plaintiffs had issued to non-party banks and a non-party accountant. (#117.) Defendants requested that the court order plaintiffs to pay the attorneys' fees and costs associated with filing the motion. *Id*. at 2. The court ordered the parties to confer (#121) and file a joint status report on their progress resolving the dispute, which they did (#122).

As explained in the joint status report, the dispute arose because plaintiffs sought discovery regarding the finances of the defendant company, Inner Mongolia, and of the two individual defendants, Xu and Qin. *Id*. at 2. Plaintiffs had served document requests asking for this information; defendants objected to producing certain of the information because the request was too broad and asked for material that was irrelevant to the issues in the case. *Id*. While the parties were negotiating a resolution of their differences, plaintiffs simply issued five subpoenas to defendants' banks and accountant as an alternative means of acquiring the information. (#119 at 1-2.) After defendants' counsel objected to the subpoenas and asked plaintiffs by email to withdraw them (an email to which plaintiffs never responded), plaintiffs served two additional subpoenas on the individual defendants' banks, asking for all of their personal financial information from 2009 to the present. *Id*. at 2-3, exhibits K-L.

Plaintiffs, opposing the motion to quash, argued that defendants had no standing to object to subpoenas issued to non-parties; that since defendants objected to producing certain information, that meant plaintiffs were entitled to subpoena the documents because the

6

documents were "unavailable from other sources;" and that because defendants had produced certain documents, such as a 2012 tax return, "they waived any claim to protective order [sic] on related financial documents and records starting at least from FY 2012." *Id*. at 4.

Addressing the merits of the parties' arguments, it is clear that the subpoenas plaintiffs issued were overbroad and requested information that is not relevant to this case. For example, the subpoenas to banks asking for records concerning Inner Mongolia Xiao Wei Yang USA, Inc., had no time limitation on them. *See, e.g.,* #119, exhibit D (subpoena to Bank of America that requests "all bank records and statements" without any time limitation); exhibit E (same); exhibit F (subpoena to Citibank for same records without any time limitation); exhibit G (same). The subpoenas seeking bank records for the individual defendants were limited to records from 2009, however, the records sought were unlimited and certainly requested information that was irrelevant to this litigation. *See, e.g., id*., exhibit L (schedule seeking private bank records lists various records and then requests, "All other documents and information not specifically requested above.")

Plaintiffs improperly issued the subpoenas, since defendants had raised legitimate objections to the information plaintiffs had requested from them and were, in good faith, attempting to negotiate the production of discovery. *See* #119 (affidavit of Attorney Murillo). If plaintiffs had wanted to challenge the defendants' objections, plaintiffs should have filed a motion to compel discovery. *See Stokes v. Xerox Corp.*, No. 05-cv-71683-DT, 2006 WL 6686584, *3 (E.D. Mich. Oct. 5, 2006) (holding that "the majority view is that a party should not be permitted to circumvent the requirements and protections of Rule 34 by proceeding under Rule 45 for the production of documents belonging to a party"); *see also Layman v. Junior*

*Players Golf Academy, Inc*., 314 F.R.D. 379, 386 (D. S. C. 2016) (holding that it was improper for a party to issue a Rule 45 subpoena in "an attempt to circumvent Rule 34 via Rule 45").

Plaintiffs' arguments justifying the issuance of the subpoenas are plainly without merit. Contrary to plaintiffs' assertions, defendants have standing to object to subpoenas issued to nonparties. In *Enargy Power (Shenzhen) Co. Ltd. v. Xioalong Wang,* No. 13-11348-DJC, 2014 WL 2048416 (D. Mass. May 16, 2014), Magistrate Judge Boal, ruling on defendants' motion to quash, found that subpoenas issued to a third-party bank for defendants' banking records were overly broad and requested irrelevant information. *Id*. at *3-*4. She expressly held that "[a] party has standing to quash a subpoena served on a nonparty if he or she has a personal right or privilege with respect to the requested information." *Id.* at *2 n.4. (citations omitted). Plaintiffs' argument that bank customers have no privacy interests in their records, citing irrelevant criminal cases based on Fourth Amendment rights, (#123 at 5), is wrong. "Bank customers have a personal right with respect to their bank account records." *Enargy Power*, *supra*, at *2 n.4, citing *Transcor, Inc. v. Furney Charters, Inc*., 212 F.R.D. 588, 591 (D. Kan. 2003); *Schmulovich v. 1161 Fr. 9 LLC*, No. 07-597(FLW), 2008 WL 4572537, at *4 (D.N.J. Oct. 14, 2008). Plaintiffs' argument that the fact that defendants provided plaintiffs with certain tax returns meant defendants had waived all objections to all financial documents borders on frivolous.

Plaintiffs next filed a cross-motion for sanctions (#123), repeating their arguments from the joint status report and blaming the situation on defendants, who had engaged in "repeated, tactic [sic] and bad faith failure to conduct discovery" by responding with "boilerplate, invalid, if not abusive form objections." (#124 at 2.) Plaintiffs asked the court to sanction defendants' counsel, specifically, Attorney Elizabeth Brady Murillo, under 28 U.S.C. § 1927, for "repeated, frivolous and vexatious conduct, their obstruction and failure to conduct discovery, and third-

party production of records and bank statements, *and potentially falsifying discovery documents including purported Federal tax returns, among other things*." *Id*. at 15 (emphasis added). Plaintiffs further proposed that defendants' counsel be sanctioned under various Federal Rules of Civil Procedure, including Rule 26(g), for signing the pleading objecting to the subpoenas. *Id*. at 19-20. Attorney Xu summed up his argument against Attorney Murillo:

> Here, Defendants' counsel's frivolous and bad faith obstruction is clear: She refused to conduct or make a meaningful discovery [sic], without standing nor any legal ground, prevented third parties to comply [sic] with discovery demands and subpoenas, *and possibly falsified (or directed the accountant, Liang Zhang of Z&Z Accounting, to falsify) purported tax returns* to further obfuscate, impede and deny Plaintiffs' civil discovery.

*Id.* at 17 (emphasis added).

Defendants responded with a further motion for sanctions (#129), which is the subject of this Order, and later filed an addendum setting out other cases illustrating Attorney Xu's "history of misconduct during litigation that extends well beyond this matter." (#133 at 1.) In the most egregious example, Judge Alison J. Nathan of the United States District Court for the Southern District of New York dismissed Mr. Xu's client's claims as a sanction under Rules 37 and 41; the 22-page decision, dated November 28, 2012, is attached to defendants' addendum, *see* #133-1. Judge Nathan found that Mr. Xu's obstructive conduct in willfully failing to abide by court orders, making misrepresentations to the court, and purposefully delaying the case warranted dismissal of the action. *Id.* at 16-22. In addition, defendants attached documentation from four other prior cases involving Attorney Xu that demonstrate a striking pattern of engaging in abusive litigation tactics. (#133 at 3-4.)

Plaintiffs promptly filed another motion moving for sanctions against defendants, arguing that they should be sanctioned "for vexatious, frivolous and sometimes gratuitous discovery

9

motions, their sandbagging and stonewalling, their failure and bad-faith refusal to produce basic, directly relevant documents and information, and their illegal obstructions." (#135 at 10.)

The court heard argument on the defendants' motion to quash the subpoenas (#117) and subsequent motions, including the motions for sanctions, on February 13, 2018. (#139.) At the hearing, the court asked Mr. Xu what evidence he had to support his accusations that Attorney Murillo had falsified, or directed the defendants' account to falsify, documents. Mr. Xu first denied making any such accusation. When the court read to him from his memorandum, he admitted that he did not have any basis for the argument.

After hearing argument from the parties, the court quashed the subpoenas, denied the plaintiffs' motion for sanctions, #123, and took defendants' motion for sanctions, #129, under advisement. (#139.)

### III. The Law Pertaining to Sanctions.

Defendants request sanctions pursuant to 28 U.S.C. § 1927 and also pursuant to the court's inherent authority to sanction parties for discovery violations. (#128 at 9-10.) Defendants argue that sanctions are warranted because plaintiffs "deliberately and unnecessarily" multiplied the proceedings by issuing the subpoenas rather than filing a motion to compel, and because plaintiffs made "unfounded attacks on the ethics and credibility of opposing counsel." *Id*.

Title 28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The First Circuit has explained that "[l]itigation conduct qualifies as 'vexatious' if it is 'harassing or annoying, regardless of whether it is intended to be so.'" *Lamboy-Ortiz v. Oriz-Velez*, 630 F.3d

10

228, 245 (1ˢᵗ Cir. 2010) (quoting *Cruz v. Savage*, 896 F.2d 626, 632 (1ˢᵗ Cir. 1990)). "Garden-variety carelessness or even incompetence, without more, will not suffice to ground the imposition of sanctions under section 1927. Rather, an attorney's actions must evince a studied disregard of the need for an orderly judicial process … or add up to a reckless breach of the lawyer's obligations as an officer of the court …." *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1ˢᵗ Cir. 2008). "Bad faith is not an essential element, but a finding of bad faith is usually a telltale indicium of sanctionable conduct." *Id.* (citations omitted.)

In *Irwin Indus. Tool Co. v. Bibow Indus., Inc.*, No. 11-cv-30023-DPW, 2014 WL 1323744 (D. Mass. Mar. 31, 2014), Judge Woodlock found that an attorney's repeated abuse of the discovery process warranted sanctions under § 1927. *Id*. at *6. The attorney's history, which mirrors Attorney Xu's conduct in this case, suggested that he

> was unwilling to engage in meaningful discussions with opposing counsel, as is necessary to resolve litigation efficiently and expeditiously; that he demonstrated an instinct to engage in motion practice on issues as a first, rather than last resort; and more generally, that he lacked a firm grasp of the rules and responsibilities of attorneys practicing before this court.

*Id*.

The court here finds that Attorney Xu, by issuing the seven subpoenas and forcing defendants to file and litigate a motion to quash, and then forcing defendants to defend a frivolous motion for sanctions against defendants, engaged in conduct warranting a sanction of attorneys' fees and costs under § 1927. As discussed above, defendants were in good faith attempting to negotiate a discovery dispute when plaintiffs improperly issued the subpoenas under Rule 45 as an end-run around Rule 34.[4] Plaintiffs responded to the motion to quash with

---

[4] To the extent plaintiffs dispute defendants' account of the parties' actions prior to the plaintiffs' issuing the subpoenas, *see* ##123-125, the court does not credit plaintiffs' account. The court has carefully studied the materials submitted by defendants in support of their motion, *see* ##117-119, 122, 133, and finds that defendants credibly relate the sequence of events.

fallacious legal arguments and filed a baseless cross-motion for sanctions that, among other things, wrongly accused opposing counsel of falsifying documents. This conduct was in keeping with Mr. Xu's conduct throughout this litigation, in which he has demonstrated that he will not follow the rules of discovery, is not willing to engage in meaningful discussions with opposing counsel, maintains legal positions that are not supported by law, and lacks "a firm grasp of the rules and responsibilities of attorneys practicing before this court." *Bibow*, 2014 WL 1323722, at *6.

Attorney Xu also admitted at the hearing on February 13, 2018 that he wrongfully accused Attorney Murillo of fabricating evidence. The court finds that he should be sanctioned for this conduct, under the court's inherent power to sanction parties for misconduct during litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (holding that courts are invested with inherent power to impose sanctions for bad-faith conduct, including attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1985)); *In re Plaza-Martinez,* 747 F.3d 10, 13 (1st Cir. 2014) (holding that district court's inherent powers permit it to levy a fine on an attorney for misconduct). Courts have also found that falsely accusing opposing counsel of misconduct is sanctionable under Fed. R. Civ. P. 11. *See Balerna v. Gilberti,* 281 F.R.D. 63, 70 (D. Mass. 2012) (holding that Rule 11 sanctions were warranted where counsel made false accusations against opposing counsel); *McGarry v. Geriatric Facilities of Cape Cod, Inc.,* No. 10-cv-11343-GAO, 2011 WL 2600574, at *2 (D. Mass. June 28, 2011) ("Plaintiff's conduct in making false allegations against defense counsel and Ms. Morse is in violation of Rule 11 of the Federal Rules of Civil Procedure.")

IV. <u>The Proper Sanction</u>.

Under 28 U.S.C. § 1927, sanctions are not limited to the minimum level necessary to deter repeated conduct. *Lamboy-Ortiz*, 630 F. 3d at 247. "[T]he fairest reading of section 1927 and its legislative history suggests that the statute's purpose is both to 'deter frivolous litigation and abusive practices by attorneys *and* to ensure that those who create unnecessary costs also bear them.'" *Id*. (quoting *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005)) (internal quotation marks omitted). The court finds that the appropriate sanction is that plaintiffs pay defendants' attorneys' fees and costs for filing the motion to quash the subpoenas, including drafting the motion, drafting responses to plaintiffs' opposition and motion for sanctions, conferring with plaintiffs' counsel concerning the motion, drafting the joint status report, and arguing those matters before this court on February 13, 2018. With regard to Attorney Xu's unfounded accusations against Attorney Murillo, the court finds that the payment of attorneys' fees and costs already ordered is enough of a monetary sanction against Attorney Xu, and will not impose additional fees. The court does, however, formally admonish Attorney Xu.

V. <u>Conclusion.</u>

For the above reasons, defendants' motion for sanctions, #129, is ALLOWED and attorneys' fees and costs shall be paid by plaintiffs. Defendants shall submit records pertaining to such fees by April 20, 2018. Plaintiffs may object to the reasonableness of the fees no later than May 4, 2018.

/s / M. Page Kelley  
M. Page Kelley  
United States Magistrate Judge

March 30, 2018