UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-10114-DJC

XIAO WEI CATERING LINKAGE
IN INNER MONGOLIA CO. LTD.,
AND FEI XIE,
    Plaintiffs, and Defendants–in-Counterclaim,

v.

INNER MONGOLIA XIAO WEI YANG
USA, INC., d/b/a XIAO WEI YANG
AND/OR LITTLE LAMB RESTAURANT,
CHENG XU, AND YONGHUA QIN,
    Defendants, and Plaintiffs-in-Counterclaim.

### ORDER ON DEFENDANTS' MOTION TO DEEM THEIR REQUESTS FOR ADMISSIONS ADMITTED (#140).

KELLEY, U.S.M.J.

#### I. Introduction.

This case involves an agreement gone awry between a hot-pot restaurant chain headquartered in China, and the owners of a restaurant in Boston, Massachusetts, who wanted to become a franchisee of the Chinese company. The suit has been marked by frequent, acrimonious discovery disputes, which in large part have been caused by plaintiffs' failure to follow the rules of discovery. In a previous Order, this court found that plaintiffs' counsel, Attorney Frank Xu, admitted to this court *pro hac vice* from New York, should pay reasonable attorneys' fees and costs to defendants' counsel under 28 U.S.C. § 1927 for defendants' work on a motion for a protective order and to quash subpoenas issued by plaintiffs. (#147.) The court further ordered under its inherent authority that Attorney Xu should be formally sanctioned for

gratuitously accusing defendants' counsel, Attorney Elizabeth Brady Murillo, of fabricating documents. *Id*. In this Order, the court allows defendants' motion to deem their requests for admission admitted. (#140.) The court will hold a hearing on the request for sanctions.

The facts of this case are described in detail in Judge Casper's Order on defendants' motion for summary judgment, in which she dismissed counts I-IV of the nine-count complaint. (#81 at 2-4, 15.)[1] The facts are repeated here in abbreviated form. Plaintiffs, Xiao Wei Catering Linkage in Inner Mongolia Co., Ltd. (Linkage), and Fei Xie, a chef employed by Linkage, brought suit against defendants Inner Mongolia Xiao Wei Yang USA, Inc. (Inner Mongolia), and two individuals, Cheng Xu and Yonghua Qin. (#1.) Plaintiff Linkage is a large, well-known restaurant chain in China; defendant Inner Mongolia is a Massachusetts corporation that operated a restaurant in Boston, Massachusetts called the "Little Lamb Restaurant." (#1 ¶¶ 1-3; #90 at 10.) Defendants Xu and Qin are married, live in Massachusetts, and are president and treasurer of Inner Mongolia, respectively. *Id*. ¶¶ 4-6.

In 2011, Xu and Qin traveled to China and negotiated a Cooperation Agreement with Linkage so that they could become Linkage's first franchisee in the United States. *Id.* ¶¶ 11-12. The complaint alleges that Xu and Qin fraudulently represented themselves to Linkage, concealed material facts, and so induced Linkage to enter into the Cooperation Agreement,

---

[1] Judge Casper allowed the defendants' motion for summary judgment on Counts I-IV because those claims, (breach of contract, Count I, breach of the implied covenant of good faith and fair dealing, Count II, fraudulent inducement, Count III, and unjust enrichment, Count IV), were subject to a forum selection clause in the Cooperation Agreement between the parties and thus any litigation involving those claims must take place in China. (#81 at 14.) She further allowed defendants' motion to dismiss Counts V-IX, (statutory and common law trademark infringement, Count V, false designation of origin under 15 U.S.C. § 1125(a), Count VI, trademark dilution under Mass. Gen. L. c. 110H, Count VII, unfair competition, Count VIII, and unfair and deceptive trade practices under Mass. Gen. L. c. 93A, Count IX), to the extent that they were raised by plaintiff Fei Xie. (#26 at 16.)

2

which Linkage would not have done but for Xu and Qin's misrepresentations.[2] *Id.* ¶¶ 13-15. Xu and Qin are also alleged to have misappropriated Linkage's brand-name and confidential knowledge, and are said to have violated Linkage's federal trademark registration and other intellectual property rights. *Id*. ¶¶ 16-17.

Plaintiffs allege that defendants breached the Cooperation Agreement by withdrawing visa sponsorship for Xie, the chef Linkage sent to work with Xu and Qin, and exploited Xie's specialized knowledge and trade secrets while refusing to pay for his expenses as the Cooperation Agreement required them to do. *Id*. ¶ 19.

Finally, plaintiffs claim that defendants gained business revenues as a franchisee, but did not pay franchise fees as the Cooperation Agreement provided. *Id*. ¶¶ 18, 22. Pursuant to the Agreement, Linkage transferred capital and money to defendants, including loans totaling approximately $66,000. *Id*. ¶ 20.

## II. The Motion for Requests for Admission to be Deemed Admitted.

As noted in the court's previous Order sanctioning Attorney Xu, plaintiffs in this case repeatedly have failed to comply with the rules of discovery. (#147 at 3.) The court set out several examples in its previous Order and will not repeat them here. *Id.* at 4-10. The court concluded there

> . . . that Attorney Xu, by issuing the seven subpoenas and forcing defendants to file and then litigate a motion to quash, and then further litigate a frivolous motion for sanctions against defendants, engaged in conduct warranting a sanction of attorneys' fees and costs under § 1927 . . . [D]efendants were in good faith attempting to negotiate a discovery dispute when plaintiffs improperly issued the subpoenas under Rule 45 as an end-run around Rule 34. Plaintiffs responded to the motion to quash with fallacious legal arguments and promptly filed a baseless cross-motion for sanctions that, among other things, wrongly accused opposing counsel of falsifying documents. This conduct was in keeping with Mr. Xu's conduct throughout this litigation, in which he has demonstrated that he will not follow the rules of discovery, is not willing to engage in meaningful

---
[2] The complaint alleges that the misrepresentation Xu and Quin made was that they were "unrelated and competing merchants, when, in fact, they were spouses." *Id*. at 1.

discussions with opposing counsel, maintains legal positions that are not supported by law, and lacks "a firm grasp of the rules and responsibilities of attorneys practicing before this court."

*Id.* at 11-12 (quoting *Irwin Indus. Tool Co. v. Bibow Indus., Inc.*, No. 11-cv-30023-DPW, 2014 WL 1323744, at *6 (D. Mass. Mar. 31, 2014)).

Here, defendants move that their requests for admission be deemed admitted. (#140.) First, defendants argue, plaintiffs' responses were outside the 30-day response period established by Fed. R. Civ. P. 36 (3). Defendants served their first set of requests for admission on October 27, 2017, and received responses from plaintiffs on November 30, 2017. (#141 at 2.) The court finds that because Fed. R. Civ. P. 6 (a)(1)(C) allows three extra days for requests served by mail, plaintiffs' response was not late.[3] In any event, defendants wrote to plaintiffs' counsel to address deficiencies in the response on December 7, 2017. *Id*. Plaintiffs never responded. *Id.*

In January 2018, in a filing pertaining to another discovery dispute, defendants again raised the issue of the deficient responses to the request for admissions. *Id*. Again, plaintiffs did not respond. *Id*.

Three months after defendants sent their first communication regarding the deficiencies in plaintiffs' response, on March 2, 2018, defendants again contacted counsel for plaintiffs and informed them that if they did not respond, defendants intended to file a motion with the court. *Id.* at 3. On March 9, plaintiffs filed a "supplemental answer" which contained no amended responses, only legal arguments about why plaintiffs would not agree to any of the admissions.

---

[3] If the requests were served by mail on October 27, 2017, *see* #145 at 9, they were due on Sunday, November 26, thirty days later. Rule 6 (a)(1)(C) provides that if the last day of a period falls on a Sunday, the period is extended to the next day, so the plaintiffs' responses were due Monday, November 27. If under Fed. R. Civ. P. 6 (a)(1)(C) one allows three extra days for requests served by mail, then the responses were due Thursday, November 30. One could also say that if the requests were served by mail on October 27, 2017, and one allowed for thirty-three days for responses, the responses were due November 29, 2017. Either way, the responses were not late.

*Id.* Defendants characterize the legal arguments as "baseless," *id.*; as set out below, the court agrees with this characterization.

Defendants filed the present motion asking that the requests for admission be deemed admitted, that they be awarded legal fees, and that the case be dismissed. (#140.) Plaintiffs filed an opposition. (#145). The requests for admission fall into three categories, discussed below.

III. Rule 36.

Rule 36 of the Federal Rules of Civil Procedure provides, "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) . . . " Fed. R. Civ. P. 36 (a)(1). A matter is admitted "unless, within 30 days after having been served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." Fed. R. Civ. P. 36 (a)(3). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36 (a)(4). "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36 (a)(6). *See Foley v. Yacht Management Group, Inc.*, No. 09-cv-11280-DJC, 2011 WL 4020835, at *3 (D. Mass. Sep. 9, 2011) (noting that court granted motion to deem requests for admissions admitted for failure properly to answer); *Bouchard v. United States*, 241 F.R.D. 72, 76 (D. Me. 2007) (granting motion to deem requests for admission admitted where party unreasonably refused to answer regarding matters of which he has personal knowledge).

IV. The Requests for Admission.

A. Requests for Admission Nos. 1-7

Requests for admission nos. 1-7 concern the Cooperation Agreement. They ask plaintiffs to admit: that they entered into the Agreement on July 6, 2011 (no. 1); that the attached version of the Agreement is a true and accurate translation of the original (no. 2); that the Agreement was valid for five years (no. 3); that the Agreement granted defendants certain use of the asserted trademark (no. 4); that pursuant to the Agreement plaintiff agreed to support Xu in promoting and developing a restaurant franchise under the asserted trademark (no. 5); the plaintiff appointed defendant Xu as its exclusive agent to develop a restaurant franchise under the asserted trademark (no. 6); and that Xu was permitted under the Agreement to operate solely or jointly with other third-party franchise restaurants under the asserted trademark (no. 7). (#141 at 5.)

Rather than properly admitting or denying these requests, plaintiffs responded first with two pages of non-applicable boilerplate "general objections," such as, the requests "are directed to matters not relevant to the matters at issue in this action," *see* #141-1 at 2, and "are overly broad, unduly burdensome, or oppressive." *Id*.

The specific objections are no better: six of the seven answers consist of boilerplate on two points: first, that "the 'Cooperation Agreement' especially the purported English translation, referenced to [sic] is NOT certified, stipulated, or admitted to evidence," and second, "And, term, [sic] validity and the alleged contract and 'contract [Cooperation Agreement] claim' having been dismissed, therefore are no longer in issue or before the Court. Pursuant to the Court, Court's order, Doc. 81, 'contract ['Cooperation Agreement'] claims are DISMISSED." *Id*. at 4-7. The only answer that has any different content is to request no. 4, which asks plaintiff to

admit that under the Cooperation Agreement, plaintiff granted defendants certain use of the asserted trademark. Plaintiff's answer to this was that Linkage "did NOT grant Defendants any right to use of its Trademark or any other intellectual property rights." *Id.* at 5.

Plaintiffs argue that the requests for admission concerning the Cooperation Agreement are improper because the facts they ask plaintiffs to admit are "in intense dispute," (#145 at 3), and they have to do with "dismissed claims." *Id*. at 5. It is true that Judge Casper dismissed the counts in the complaint having to do with contract disputes, since she found that the forum selection clause in the Cooperation Agreement dictated that those counts be litigated in China. (#81 at 8-14.) What counts remain here have to do with defendants' use of the trademark. (#1 at 10-13.) Nevertheless, as defendants argue, the Cooperation Agreement is still very much at issue in this case, since defendants' defense to the trademark claims is that defendants were authorized by the Cooperation Agreement to use the trademark. (#141 at 4.)

Plaintiffs' objections to some of the requests are obviously unreasonable, for example, they refuse to admit to request no. 1, "You entered into a Cooperation Agreement with Defendants Qin and Xu on or about July 6, 2011," (#145-1 at 6), when plaintiffs state that exact fact in their complaint, *see* #1 at 4. Furthermore, plaintiffs repeatedly refer to the Cooperation Agreement in their complaint, alleging that defendants breached it. *See, e.g., id*. at 2. Plaintiffs cannot expect to litigate the case without acknowledging that the Cooperation Agreement exists, and settling with defendants on a true and accurate copy of the Agreement. Nevertheless, they have persisted for months in refusing to cooperate with defendants on establishing these very basic facts. To what extent Judge Casper will permit the parties to litigate the validity of the Agreement is a subject that will be worked out with Judge Casper prior to the trial. At this point, however, plaintiffs' responses, in which they unreasonably refuse to admit to any facts about the

Agreement, are in violation of Rule 36. *Cf. Bouchard*, 241 F.R.D. at 77 (admitting documents are authentic and admissible under exceptions to hearsay rules is not the same as admitting they are admissible at trial).

The court has reviewed the Cooperation Agreement as translated by defendants. (#9-1.) Each admission defendants request is in the Agreement. Given the inadequacy of plaintiffs' responses, the court finds that these requests are deemed admitted.

B.  Requests for Admission Nos. 9-10, 15.

These requests seek factual admissions regarding the restaurant in question and plaintiffs' involvement with it. Request no. 9 states, "Plaintiff announced the opening of the 'Little Lamb' restaurant located at 326 Cambridge Street, Boston, MA in your corporate newsletter." (#145-1 at 9.)  Plaintiffs admit "if any is certified, admitted into evidence and stipulated to." *Id*.  The answer is nonsensical. Whether a document is eventually admitted into evidence at trial is irrelevant to a request for admission. *Bouchard*, 241 F.R.D. at 77. Plaintiffs seek the admission so they need not take further steps to have the newsletter "certified" or "stipulated to."

The other requests for admission, whether the restaurant was the first franchised restaurant in the United States (no. 10), and whether Jiarong Yu of Linkage visited the restaurant on a certain date (no. 15), are also straightforward factual questions that defendants improperly do not answer, for example, they object to admitting that Yu visited the restaurant as "irrelevant, and out of scope [sic]." *Id*. at 9-10, 11. These answers are in violation of Rule 36 and are deemed admitted.

C.  Requests for Admission Nos. 12-13.

Request no. 12 asks plaintiffs to admit that a certain attachment "is a true and accurate copy of the Section 71 Request and two Specimens you filed with the U.S.P.T.O. on December

29, 2013 concerning the Asserted Trademark." *Id*. at 10. Plaintiffs' response is nearly incomprehensible:

> ADMIT to the extent, the purported Section 71 Declaration declared "Continued Use/Excusable Nonuse of Mark in Commerce" U.S.P.T.O. Registration No. 3550357 Registered on date: 12/23/2008 of Asserted Mark (Stylized and/or with Design, LITTLE LAMB), by the "owner/holder, XIOA WEI YANG CATERING LINKAGE; IN INNER MONGOLIA CO., LTD., a corporation of China;" and DENY all others.

*Id*.

Request no. 13 asks plaintiffs to admit that "[t]he two Specimens you filed with the U.S.P.T.O. on December 29, 2013 are photographs of a restaurant fixture from the "Little Lamb" restaurant located at 326 Cambridge Street." *Id*. The response is "Same Answer, General and specific objections as above." These responses do not comport with Rule 36 and thus the requests are deemed admitted.

## V. Conclusion.

For the above reasons, defendants' motion to deem requests for admission, #140, is ALLOWED. The court will schedule a hearing regarding whether plaintiffs should be sanctioned.

April 9, 2018

/s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge

9