UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| XIAO WEI YANG CATERING LINKAGE IN INNER MONGOLIA CO. LTD et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action 15-cv-10114-DJC |
| INNER MONGOLIA XIAO WEI YANG USA, INC. et al., | ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                    September 20, 2018

**I.    Introduction**

Plaintiffs Xiao Wei Yang Catering Linkage in Inner Mongolia Co., LTD. ("Linkage") and Fei Xie ("Xie") (collectively, "Plaintiffs") have filed this lawsuit against Defendants Inner Mongolia Xiao Wei Yang USA, Inc., d/b/a Xiao Wei Yang and/or Little Lamb Restaurant ("Xiao Wei USA"), Cheng Xu ("Xu") and Yonghua Qin ("Qin") (collectively, "Defendants"). D.1. The Court previously allowed Defendants' motion for summary judgment as to the claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraudulent inducement (Count III), unjust enrichment (Count IV), D. 81. Defendants now move for summary judgment as to the remaining claims against them, namely for trademark infringement (Count V), false designation of origin under 15 U.S.C. § 1125(a) (Count VI), trademark dilution under Mass. Gen. L. c. 110H (Count VII), unfair competition (Count VIII) and

1

unfair and deceptive trade practices under Mass. Gen. L. c. 93A (Count IX) and their counterclaims against Plaintiffs, alleging breach of contract (Counterclaim I), breach of the covenant of good faith and fair dealing (Counterclaim II), breach of fiduciary duty (Counterclaim III), misrepresentation (Counterclaim IV), conversion (Counterclaim V) and unjust enrichment (Counterclaim VI). D. 90; D. 180. For the reasons stated below, the Court ALLOWS Defendants' motion as to Plaintiffs' remaining claims and DENIES Defendants' motion with respect to their counterclaims against Plaintiffs. The Court also DENIES Defendants' request for attorney's fees, D. 180 at 19-20, without prejudice.

## II. Standard of Review

Summary judgment is proper when there is no genuine dispute as to any material fact and the undisputed facts establish that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A genuine dispute of material fact occurs when the factual evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party carries the burden of establishing the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). If the movant satisfies this burden, the non-moving party may not merely refer to allegations or denials in her pleadings. Anderson, 477 U.S. at 256. Instead, he "must, with respect to each issue on which he would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, this requires the production of evidence

2

that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.     Factual Background

As an initial matter, the Court notes that Defendants contend that Plaintiffs did not comply with Local Rule 56.1. D. 188 at 1. Pursuant to Local Rule 56.1, the party opposing a motion for summary judgment must "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Local Rule 56.1. Plaintiffs have failed to do so consistently here. In disputing certain of Defendants' statement of material facts, they have "objected" or otherwise pointed to non-probative exhibits which do not constitute a sufficient basis for this Court to find a disputed issue of fact. See D. 187; see also Change Climate, Inc. v. Massachusetts Bay Transp. Auth., 202 F.R.D. 43, 53 (D. Mass. 2001) (noting that "[t]he facts in genuine dispute must be significantly probative in order for the court to deny summary judgment; 'conclusory allegations, improbable inferences, and unsupported speculation will not suffice'") (quoting Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir.1997)). Although the Court declines to strike Plaintiffs' statement of facts, it has only considered those portions that point to specific, admissible facts contradicting the material facts assertions made by Defendants.

### A.     **Summary of Undisputed Material Facts**

#### *1.     Linkage and the Cooperation Agreement*

The following facts are taken primarily from the parties' statement of material facts and supporting materials, and are undisputed unless otherwise noted. D. 182; D. 187. It is also based upon the requests for admissions (No. 1-7, 9-10, 12-13 and 15) from Plaintiffs, D. 140, which this

3

Court (Kelley, M.J.) declared admitted. D. 153.[1] Defendant Xiao Wei USA, a Massachusetts corporation, operated, at times relevant to this action, as the "Little Lamb" restaurant in Boston. D. 182 ¶ 2. Defendants Xu and Qin, who are married, serve as the President and Treasurer/Secretary, respectively of Xiao Wei USA. Id. ¶¶ 3, 5. On July 6, 2011, Xu and Qin entered into an agreement with Linkage that lead to the formation of Xiao Wei USA. (the "Cooperation Agreement"). Id. ¶¶ 9A-9G; D. 184-1 ¶ 1. It is this Cooperation Agreement that lays at the core of Plaintiffs' trademark infringement claims and Defendants' defenses to same.

It is undisputed that Linkage is the owner of trademark Registration No. 3,550,357 (the "Trademark") registered with the United States Patent Trademark Office ("USPTO"). D. 182 ¶ 6; D. 1-1. Under the Cooperation Agreement, in relevant part, Linkage agreed to "fully support [Xu] in promoting and developing restaurant franchise market under the trademarks 'Little Lamb' and 'Happy Grassland'" and also "appoint[ed] [Xu] [as] its exclusive agent of restaurant franchise market in the United States under the trademarks 'Little Lamb' and 'Happy Grassland.'" D. 184-1 ¶ 9; see D. 184-2. The Cooperation Agreement also indicates that Xu was "permitted to operate solely or jointly with other third party franchise restaurants under the above trademarks." Id. Furthermore, the Cooperation Agreement noted that Xu was obligated to "open at least one restaurant/store or secure at least one franchise within [one] after the 1[st] "Little Lamb" store opening date" and if Xu failed to do so, "the right mentioned in Term 9 will be void." Id. ¶ 10. The Defendants Xu and Qin and Jiarong Yu ("Yu"), a representative of Linkage, executed the Cooperation Agreement. Id. at 6. Plaintiff Xie, an employee of Linkage, was not a party to the Cooperation Agreement. See D. 184-1.

---

[1] To the extent that Plaintiffs now object to this prior Order, see D. 186 at 7-8, such objection is untimely and this Court also finds it unwarranted on the merits and denies it.

On May 2, 2013, Defendants Xu and Qin opened the Little Lamb restaurant located at 326 Cambridge Street in Boston, Massachusetts. D. 182 ¶ 9I; D. 153. Plaintiff Linkage announced the opening of the Little Lamb restaurant in Boston in its corporate newsletter and included a photograph of the Trademark. D. 182 ¶ 9 H; D. 187 ¶ 9 H; D. 184-4 at 2-3. It further promoted the opening of the Boston Little Lamb restaurant on its website. D. 182 ¶ 51. Linkage's representative, Yu, also visited the Little Lamb restaurant in Boston in September 2012. D. 182 ¶ 9K. On December 29, 2013, Linkage filed two specimens, which consisted of photographs of a restaurant fixture and menu from the Little Lamb restaurant with the USPTO. D. 182 ¶ 9J; D. 183-5 at 51-52. Although the term of the Cooperation was for five years (until July 6, 2016), D. 184-1 at 6, Defendants ceased using the Trademark in February 2016, D. 182 ¶ 59; D. 184 ¶ 14, and changed the name of the restaurant from Little Lamb to "Hulun Beir." D. 182 ¶ 60; D. 184 ¶ 14.

    2.    *Xie and the Jointly Investment*

On August 12, 2011, Defendants Xu and Qin, entered into a Jointly Investment and Business Agreement (the "Jointly Agreement" as the parties reference it) with Plaintiff Xie. D. 184-5. The Jointly Agreement contemplated the parties "jointly" developing the Little Lamb restaurant in Boston under its Trademark, D. 184-5. The Jointly Agreement recognized that Xu and Qin had "obtained exclusive right to the [Little Lamb] restaurant franchise and the exclusive right to operate any and all marketing and business operations associated with [Little Lamb] restaurant franchise system." D. 184-5 ¶ 1. It also provided that Xie had "completed the initial technical training required by 'Linkage,' and [] the preparation and investigation in relevant restaurants operations in China." Id. Defendants contracted to open at least three Little Lamb restaurant chains in the U.S. within three years after setting up Xiao Wei Yang USA, Inc. D. 184-5 ¶ 2. Xie agreed to invest $100,000 in exchange for 15% share of the first Little Lamb restaurant.

5

Id. ¶ 3. The parties to this agreement each agreed to be investors and operation managers of the Little Lamb restaurant to be compensated by "salary according to the position, business profit and the local law and regulation, bonus and promotion." Id. ¶ 6. It further provides that Xie was obligated to travel promptly to the United States to participate in the development of the Boston Little Lamb restaurant requiring Xie to participate in the "completion of the business and related qualification[,]" engage in comprehensive training by Linkage, pass the English proficiency examination and apply for entry visa at the U.S. Embassy. Id. ¶ 5. Defendants Xu and Qin were obligated, under the Jointly Agreement, to work with Xie's attorney to assist Xie in applying for a United States entry visa. D. 184-5 ¶ 5. The Jointly Agreement also provided that for "any issue or conflict not addressed in [Agreement's] terms, all three parties shall negotiate friendly to resolve." D. 184-5 ¶ 6.

Plaintiffs allege that Defendants have infringed the Trademark and press their remaining claims regarding same. Defendants contend that Xie misrepresented his skills, received salary, food and transportation and then absconded with the Little Lamb restaurant's property without, among other things, sharing in the losses of the restaurant and going to work for other franchises in other cities.

### IV. Procedural History

Plaintiffs instituted this action on January 16, 2015. D. 1. Defendants originally moved to dismiss all counts. D. 8. The Court denied that motion to dismiss without prejudice as to Counts I, II, III and IV (the "contract claims"), and denied the motion to dismiss as to the remaining claims with prejudice. D. 26. As to the contract claims, the Court granted limited discovery solely on the forum-selection clause issue and noted that it would allow for a renewed motion to dismiss once discovery had been completed. Id. Thereafter, Defendants filed a renewed motion to dismiss the

contract claims, D. 63, which the Court converted into a motion for summary judgment. The Court allowed that motion as supplemented, D. 73, as to Counts I-IV. D. 81. Defendants have now moved for summary judgment with respect to the remaining Counts V, VI, VII, VIII, and IX (the "trademark infringement claims") and Defendants' counterclaims against Plaintiffs. The Court heard the parties on the motion and took the matter under advisement. D. 116.

## V. Discussion

### A. Trademark Infringement (Count V)

Plaintiffs contends that Defendants' use of the Trademark amounts to trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), and common law. To prevail on a federal trademark infringement under the Lanham Act, the plaintiff must prove that "(1) [he] owns and uses the disputed marks; (2) the defendant used similar or identical marks without permission; and (3) unauthorized use likely confused consumers, harming the plaintiff." Lyons v. Gillette, 882 F. Supp. 2d 217, 226 (D. Mass. 2012) (citing Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir.2008)).[2] Here, the dispute centers around the second prong of the analysis in regard to whether Defendants' use of the Trademark was "without permission." Defendants argue that they were expressly authorized under the Cooperation Agreement to use the Trademark. D. 182 ¶ 9D. Plaintiffs dispute this contention, however, and argues that because Defendants failed to satisfy the express condition under paragraph 10 of the Cooperation Agreement, Defendants used their Trademark without authorization. D. 186 at 11-13. Paragraph 10 of the Cooperation Agreement provides that Defendant Xu is required to "open at least one

---

[2] There has been no suggestion by the parties that the elements of common law infringement are different than the elements of a Lanham Act claim. Dialogo, LLC v. Bauza, 467 F. Supp. 2d 115, 126 n.9 (D. Mass. 2006); Jenzabar, Inc. v. Long Bow Grp., Inc., 82 Mass. App. Ct. 648, 654 (2012).

7

restaurant/store or secure at least one franchisee within [one] year after the 1st 'Little Lamb' store opening date" and that failure to do so would void the rights afforded to Defendants in Paragraph 9. D. 184-1 ¶ 10; D. 186 at 11-13. These rights, Plaintiffs argue, included appointment of Defendant Xu as its exclusive agent and authorization to operate under its Trademark. "A condition precedent defines an event which must occur before an obligation to perform arises under a contract." Santana-Colon v. Houghton Mifflin Harcourt Pub. Co., 81 F. Supp. 3d 129, 138 (D. P. R. 2014) (citing Sands v. Ridefilm Corp., 212 F.3d 657, 661-62 (1st Cir. 2000). The plain language of the Cooperation Agreement supports the conclusion that opening at least one restaurant/store or securing at least one franchisee within one year of opening the Boston Little Lamb restaurant was a condition precedent to the rights framed in Paragraph 9 of the Cooperation Agreement. D. 184-1 ¶ 10. The Court concludes, however, that this condition was met.

First, Defendant Qin testified that on May 2, 2013, Defendants opened the Boston Little Lamb restaurant and in March 2014, they also opened a Little Lamb franchise in Chicago – well within the one-year obligation. D. 188-2 at 5-7. Second, Defendants provided the Court with a copy of a bank statement demonstrating a transfer of one half of the franchise fee ($22,500.00) from the Chicago franchise to Linkage, as required by the Cooperation Agreement, for the purpose of opening the Chicago franchise. D. 188-1 at 11. Plaintiffs offer no contradicting evidence challenging the wire transfer it received from Defendants' business bank account and this Court finds no reason to question its authenticity.

Plaintiffs instead assert that the Cooperation Agreement was rescinded pursuant to a demand letter it sent Defendants on or about February 10, 2014. D. 187-1; D. 186 at 12. While the Defendants acknowledge receiving this letter, they argue it was of no legal significance because it was sent by Attorney Frank Xu ("Attorney Xu"), who was not "authorized to act on behalf of

8

Linkage." D. 188 at 3; see D. 187-1. To support this contention, Defendants maintain that it made a direct inquiry to Yu who confirmed Attorney Xu was not acting on behalf of Linkage. D. 188 at 3. Moreover, Defendants followed up with a letter, dated March 26, 2014, which it sent to Attorney Xu, explaining that Linkage was not aware of his attempt to rescind the Cooperation Agreement and that Linkage confirmed that Attorney Xu was not authorized to act on behalf its behalf. D. 188-1. The record does not reflect that Attorney Xu challenged or responded to Defendants' letter. 188-1 ¶ 7. Even assuming Attorney Xu was acting on behalf of Linkage, however, Linkage could not terminate the license in this matter under the terms of the Cooperation Agreement. See Mercado-Salinas v. Bart Enterprises Intern., Ltd, 671 F.3d 12, 22 (1st Cir. 2011) (holding that the plaintiff did not validly terminate the agreement pursuant to the terms and condition therein and thus permitted the defendant to maintain ownership of the mark). Here, paragraph 15 of the Cooperation Agreement states:

> Breach of Agreement: if [Defendant Xu] and [Defendant Qin], jointly or separately breached this agreement, [Linkage] may request [Defendants] to purchase [Linkage's] entire shares in Xiao Wei Yang USA subsidiary and/or Overseas Management Company. Otherwise [Linkage] may dispose of its shares freely. It may use the proceeds from the share transfer to reimburse [Linkage's] loss (if any). If there is any remaining fund, [Linkage] shall return any excess to [Defendants.]

The Cooperation Agreement does not include any termination or revocation clause for revoking Defendants' license in the event of a breach. D. 184-1 ¶ 15. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1308 (11th Cir. 1998) (noting that "to prevail on the merits of a trademark infringement claim against a franchisee necessitates some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the unauthorized use of trademarks by the former franchisee") (emphasis omitted). The record before the Court does not include evidence that Plaintiffs properly terminated the contract authorizing the Trademark's use.

9

Next, Plaintiffs contend that the Cooperation Agreement is unenforceable, void or invalid on account of fraud, material misrepresentation or concealment of material facts. D. 186 at 12. The undisputed material facts do not support a finding of fraudulent misrepresentation. Here, Plaintiffs fail to show how Defendants' marital status affected the ability to negotiate in good faith when it entered into the Cooperation Agreement authorizing Defendants, among other things, to use its Trademark. Plaintiffs do not argue that Defendants misinformed them about their marital status, but rather that Defendants somehow purposely concealed this information with the specific intent to induce them to enter into the Cooperation Agreement. See D. 186 at 14-15. Plaintiffs, however, offer no evidence to demonstrate this contention. Furthermore, Plaintiffs have also failed to demonstrate how it relied on the allegedly fraudulent misrepresentation and did so to their detriment. See Taylor, 576 F.3d at 31.

Moreover, there is nothing in the Court's prior ruling to suggest that Defendants cannot rely upon the Cooperation Agreement to show authorized use of the Trademark. The Court dismissed the contract claims arising from same only because of its binding forum selection clause. D. 81 at 8-12. Nothing about that legal analysis makes the Cooperation Agreement unenforceable or bars Defendants' reliance upon it here for asserting that they had a license from Plaintiffs for use of the Trademark and in defense against Plaintiffs' trademark infringement claims.

Taken together, the facts here indicate that Plaintiffs have not satisfied its burden of showing disputed issues of material fact as to the trademark infringement claim. To the contrary, the uncontested record demonstrates that Linkage appointed Defendant Xu as "its exclusive agent of restaurant franchise market in the [U.S.] under the [T]rademarks 'Little Lamb' and 'Happy Grassland,'" id. ¶ 9, and as mentioned above, it granted Defendant Xu the right "to operate solely or jointly with other third party franchise restaurants under the above [T]rademarks." Id. In

addition to the express authorization outlined in the Cooperation Agreement, the undisputed facts demonstrate that Linkage participated and supported Defendants' use of its Trademark when it partook in the selection of the "Little Lamb" location, D. 182 ¶ 33; D. 187 ¶ 33, and announced the opening of the Boston Little Lamb restaurant in its corporate newsletter including a photograph of its Trademark, D. 182 ¶ 9H; D. 187 ¶ 9H; D. 184-4 at 2-3. Linkage promoted the opening of the Little Lamb restaurant in Boston, including its use of the Trademark. D. 182 ¶¶ 49-51; D. 184 ¶ 12. Xie admits that he helped with the design of the restaurant's menu, website and marketing materials that included the Trademark. D. 183-6 at 13-14, 17; see Wine & Canvas Dev., LLC v. Muylle, 868 F.3d 534 (7th Cir. 2017) (holding that licensee had implied consent to use marks where owners allowed licensee to continue using marks for new location of wine and painting shop). Moreover, Plaintiffs' action in regard to the Trademark in the wake of the Cooperation Agreement evidenced that Defendants were authorized to use same. For one example, the specimens that Plaintiff Linkage filed with the USTO on December 29, 2013 were photographs of fixtures and the menu at the Little Lamb restaurant in Boston that Defendants were operating pursuant to their agreement. D. 182 ¶¶ 9J, 52.

Against this factual backdrop, this Court concludes that Defendants were authorized to use the Trademark. Omega S.A. v. Omega Engineering, Inc., 396 F. Supp. 2d 166, 174 (D. Conn. 2005) (finding no trademark infringement where plaintiff had consented to certain uses of the marks by the defendant "and is thereby precluded from asserting Lanham Act claims based on such use); Segal v. Geisha NYC LLC, 517 F.3d 501, 506 (7th Cir. 2008) (noting that "where the trademark holder has authorized another to issue its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized"). Where Plaintiffs' express agreement and subsequent conduct undisputedly reflects consent to Defendants'

use of the Trademark, Plaintiffs cannot now sustain trademark infringement against regarding same. Accordingly, Plaintiffs cannot satisfy the second prong of proving a trademark infringement claim and the Court need not address the elements of such claim.[3] The Court, therefore, grants summary judgment to Defendants as to Count V.

### B. False Designation of Origin under 15 U.S.C. § 1125(a) (Count VI)

Plaintiffs also argue that Defendants' use of the Trademark "constitutes false designation of origin, suggesting to consumers that Defendants are associated with or sponsored by Plaintiffs." D. 1 ¶ 55. Pursuant to 15 U.S.C. § 1125(a), a defendant may be liable for misuse of the "goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging," if such marking forms the impression that the defendant's products originated with a plaintiff. Purolator, Inc. v. EFRA Distributors, Inc., 687 F.2d 554, 561 (1st Cir. 1982). For this claim, a plaintiff must show that the defendant used the mark in interstate commerce "which is likely to cause confusion or deceive purchasers concerning the source of the goods." See R.J. Toomey Co. v. Toomey, 683 F. Supp. 873, 876 (D. Mass. 1988). That is, a plaintiff must demonstrate that a marking is "confusingly similar to an already established one, or an attempt by a defendant to 'palm off' its goods as those of a competitor by use of the competitor's mark." Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 208 (1st Cir. 1996). As with a trademark infringement claim, however, where a trademark

---

[3] The Court notes that Plaintiffs have also failed, throughout this litigation, to produce any evidence of their damages as to any alleged injury or damages as to the trademark claims in this case. D. 182 ¶¶ 55-58. In opposition to Defendants' motion for summary judgment, they have failed to do so as well and, therefore, for this additional reasons, summary judgment for Defendants is warranted as to their trademark claims. Contrary to Plaintiffs' suggestion otherwise, there is no presumption of damages for the type of Lanham Act infringement claim that they assert here. See Am Med. Sys., Inc. v. Biolitec, Inc., 774 F. Supp. 2d 375, 391 n. 5 (D. Mass. 2011) (noting that other Circuits, not the First Circuit have adopted a presumption of injury due to literal falsity for a false advertising claim under the Lanham Act).

holder has authorized another to use its trademark, there can be no such likelihood of confusion. See Segal, 517 F.3d at 506. Since Defendants were authorized to use the Trademark, as discussed above, this claim fails as well. Accordingly, the Court allows summary judgment for Defendants as to Count VI.

### C. State Dilution under Mass. Gen. Laws Ch. 110H (Count VII)

Plaintiffs further allege that Defendants engaged in trademark dilution thereby causing damage to the reputation of Plaintiffs' business. Mass. Gen. Laws Ch. 110H, §13 states as follows:

> [l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Mass. Gen. Law c. 110H, § 13. As indicated above, § 13 of the anti-dilution statute affords injunctive relief if there is a likelihood of injury to the business reputation or of dilution of a trademark. Given the authorization that Defendants had to use the Trademark as discussed above and in the absence of any specific, admissible evidence proffered by Plaintiffs as to the injury to business reputation or dilution of the Trademark as result of such use, this claim fails. Accordingly, the Court grants summary judgment to Defendants as to Count VII.

### D. Common Law Unfair Competition (Count VIII)

Count VIII alleges that Defendants' use of the Trademark also constitutes common law unfair competition. D. 1 at 12. "The essential element of a claim of unfair competition is thus the same as that for the infringement or false designation of origin claim: the plaintiff must prove the likelihood of consumer confusion." Polo Fashions, Inc. v. Branded Apparel Merch., Inc., 592 F. Supp. 648, 652 (D. Mass. 1984). As noted, where a trademark owner has authorized use of that mark to another, there can be no likelihood of confusion. See Segal, 517 F.3d at 506. As discussed above, since the undisputed record shows that Defendants' use of the Trademark was authorized

and fails to show evidence of any injury to Plaintiffs from such alleged unfair competition, the Court grants summary judgment to Defendants as to Count VIII.

###    E. Unfair and Deceptive Trade Practices under Chapter 93A (Count IX)

Plaintiffs also contend that Defendants engaged in unfair and deceptive trade practices in violation of Chapter 93A. D. 186 at 18-19. "[A] practice or act will be unfair under [Chapter 93A] if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.'" Incase v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Morrison v. Toys "R" Us, Inc., 441 Mass. 451 (2004)). In deciding whether there has been a violation of Chapter 93A, the Court "focus[es] on the nature of challenged conduct and on the purpose and effect of that conduct." Mass. Emp'rs Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42 (1995). Here, the allegedly unfair and deceptive conduct is trademark infringement, D. 1 ¶¶ 69-74, based upon the same factual allegations made in support of Plaintiffs' infringement claims. See 186 at 8-17. As the Court discussed above, there is no evidence supporting a claim that Defendants infringed the Trademark. See D. 184-1 ¶ 9; D. 182 ¶¶ 9H, 33-34, 36; D. 187 ¶¶ 9H, 33-34, 36; D. 184-4 at 2-3. As such, the Court allows summary judgment to the Defendants as to Count IX.

###    F. The Court DENIES Summary Judgment to Defendants on Counterclaims

Although the Court agrees with Defendants that Plaintiffs gave scant attention to their summary judgment motion as to counterclaims against them in their opposition, D. 186 at 19, the record does not presently support finding for Defendants, as a matter of law on their counterclaims as there are some disputes of material facts. The Court will briefly address same.

> *a) Counterclaims I, II and VI: Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing and Unjust Enrichment*

Defendants assert that Xie breached the Jointly Agreement when he "abandoned the business and his obligation to work in the business, stole partnership property and left [Defendants] with no way to reach him." D. 181 at 14. "To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." Guckenberger v. Boston Univ., 974 F. Supp. 106, 150 (D. Mass. 1997) (internal quotation marks omitted). Here, there is undisputed evidence that there was a valid contract: there was an offer by Defendants to partner with Xie to operate the Boston Little Lamb restaurant, Xie accepted that offer and, having "reached mutual understanding," D. 184-5 at 1, under the terms of the agreement, Xie would receive consideration in the form an ownership interest in the restaurant, housing, food and a salary. D. 184-5; D. 182 ¶¶ 88-9. Specifically under the contract, Xie agreed to invest $100,000, representing a 15% share of the first Little Lamb restaurant and that within one month of the date of the agreement, he would pay those funds to a subsidiary of Linkage and, thereafter, shall become "a shareholder." D. 184-5 at 3. The parties to this contract also agreed that each party was an investor and also a "business operator" managing the restaurant. Id. Under the contract, Xie agreed with Xu and Qin "for any issue or conflict not addressed in above terms, all three parties shall negotiate friendly to resolve."

It is undisputed that there was a valid contract. It remains disputed, even in light of Plaintiffs' imprecise responses to Defendants' statement of fact, whether Xie breached the contract. A material breach occurs when the breach goes to "an essential and inducing feature of the contract." Lease–It v. Massachusetts Port Authority, 33 Mass. App. Ct. 391, 396, 600 N.E.2d 599 (1992) (citing Bucholz v. Green Bros. Co., 272 Mass. 49, 52, 172 N.E. 101 (1930)). Here, the

alleged breaches concern the contract provisions concern Xie's role as business operator, that "all three parties shall negotiate friendly to resolve" any issues that arose and, in essence, breaches of the implied covenant of good faith and fair dealing implicit in every contract. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (internal quotation marks omitted); see Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005) (noting that "[t]he scope of the covenant is only as broad as the contract that governs the particular relationship"). For this reason, the Court addresses Counterclaims I and II together.

Defendants argue that Xie breached the Jointly Agreement in at least three ways. D. 181 at 13-14; D. 186 at 19-20. First, Defendants argue that despite Xie's contractual obligation to negotiate to resolve disputes, Xie stopped working at the Little Lamb restaurant in Boston and "refused to return emails from [Defendant] Qin." D. 181 at 14. Second, Xie contends that in lieu of fulfilling his obligation to work with Defendants to develop and assist with franchising the business under the Trademark, Xie began working for competing Little Lamb restaurants in New York and a different one in New Jersey. Id. Third, Defendants assert that Xie stole partnership property, including "restaurant ledgers, accounting book, transaction receipts, nearly $7,000 cash, [] keys to the storage locker and the password to the restaurant website. D. 182 ¶ 97; see D. 181 at 14. To support its claims, Defendants point to the depositions and affidavits of Defendants Qin and Xu. D. 182 ¶¶ 83-105, 108-112; D. 187 ¶¶ 83-105, 108-112.

In response, Xie "disputes" Defendants' contentions, D. 186 at 19-20; see D. 187 ¶¶ 83-105, 108-112. Although he does not point to specific admissible evidence as to all of these facts, he does so as to some of the alleged breaches of the Jointly Agreement. First, Xie testified that he did not take the property of the Little Lamb's property, ledgers, account books or passwords to its accounts. D. 187-8 at 23-26. Second, although the Jointly Agreement provides that the parties

would cooperate in the opening of several Little Lamb restaurants, it has no provisions barring Xie from working with other restaurants, setting what Xie's exact salary (and Xie disputes that he received his proper salary, D. 187-8 at 10-11) would be or how Plaintiffs could recoup any such compensation to Xie. Third, although the Jointly Agreement provides that the parties "shall negotiate friendly to resolve" any issue or conflict not addressed in the terms of the agreement, the Court cannot conclude, as a matter of undisputed fact, on the present record that Xie failed to meet this contractual obligation.

Accordingly, the Court denies summary judgment to Defendants as to Counterclaims I and II. Since Defendants' Counterclaim VI for unjust enrichment will rise or fall if they have an adequate remedy at law (namely, Counterclaim I for breach of contract), Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982), this claim cannot now be resolved. Accordingly, the Court denies summary judgment on Counterclaim VI as well.

    *b) Counterclaim III: Breach of Fiduciary Duty*

Defendants argue that Xie owed them a fiduciary duty because they were "partners" in the Boston Little Lamb restaurant. D. 181 at 16. To prove a breach of fiduciary duty under Massachusetts law, a plaintiff must establish "(1) the existence of a duty of a fiduciary nature, based upon the relationship of the parties, (2) breach of that duty, and (3) a causal relationship between that breach and some resulting harm to the plaintiff." Amorim Holding Financiera, S.G.P.S., S.A. v. C.P. Baker & Co., 53 F. Supp. 3d 279 (D. Mass 2014). Assuming *arguendo* that Xie had a fiduciary duty to Defendants Xu and Qin,[4] the Court cannot find on this record as a matter of undisputed fact that Xie breached such duty. As noted above, the record reveals a factual

---

    [4] "When the contract does not entirely govern the other shareholders' or directors' actions challenged by the plaintiff, a claim for breach of fiduciary duty may still lie." Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 537 (2014).

17

dispute about the alleged contractual disputes and Defendants rely on some of the same to argue that Xie has also breached his fiduciary duty. D. 181 at 17. Defendants also contends that Xie's failure to share in Little Lamb's losses was also a breach of fiduciary duty. Id. Although Xie contests same, he does so by relying upon excerpts of Defendants' bank accounts (including expenditures for golf and other matters) to suggest that such losses, if any, are inflated, but fails to connect such expenditures to Defendants' assertion of its losses. Defendants, however, have failed to explain the basis or calculation of losses attributable to Xie other than the conclusory attestation by Qin that such losses attributable to him are $122,000. D. 184 ¶ 27. Neither is a sufficient basis to decide this as a matter of undisputed fact. Having concluded that any breach of fiduciary duty cannot be found as a matter of undisputed fact, the Court denies summary judgment to Defendants on Counterclaim III.

        *c)* *Counterclaim IV: Fraud/Misrepresentation*

This Court also cannot resolve the counterclaim alleging fraud or misrepresentation by Xie on the present record. Defendants allege that Xie committed fraud by deliberately misrepresenting that he was an experienced master chef. D. 181 at 18; D. 182 ¶¶ 76, 83-87. "The elements of fraud consist of '[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage.'" Balles v. Babcock Power, Inc., 476 Mass. 565, 573 (2017) (quoting Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982)) (alterations in original). Plaintiffs contest Defendants' assertion, contending that there was no misrepresentation about Xie's qualifications, D. 187 ¶¶ 86, 87 (relying upon Xu's affidavit). Accordingly, the Court grants summary judgment to Defendants on Counterclaim IV.

*d) Counterclaim V: Conversion*

Defendants also argue that Xie is liable for conversion because he "absconded" with partnership property. D. 181 at 18. To prove conversion, Defendants must show that Plaintiffs "intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which [they] ha[d] no right of possession at the time." Grand Pac. Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 412 (2003) (internal citation and quotation marks omitted). Since, as discussed above, there is a factual dispute about Xie's removal of such property, the Court denies summary judgment as to this counterclaim as well.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment with respect to Counts V, VI, VII, VIII, and IX and DENIES the motion as Counterclaims I, II, III, IV, V and VI. The Court DENIES Defendants' request for attorney fees, D. 180, without prejudice to renew where Defendants, although they are the prevailing party on Plaintiffs' claims, have not yet sufficiently explained in terms of addressing the non-exclusive factors under Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572, U.S. 545, 134 S. Ct. 1749, 1756 n.6 (2014) (citing factors of frivolousness, motivation, objective unreasonableness and the need to advance considerations of compensation and deterrence), see Scholz v. Goudreau, 901 F.3d 37 (1st Cir. 2018), that this is an "exceptional case" under 15 U.S.C. 1117(a) to warrant the award of reasonable attorneys' fees. Defendants have leave to do so in a supplemental filing, not to exceed ten pages by October 4, 2018. Also, by such time, October 4, 2018, Defendants shall file notice about whether they intend to continue to press their counterclaims in light of today's ruling and, if they do, what schedule they propose for doing so. Plaintiffs may respond, in no more than ten (10) pages to such filings by October 18, 2018.

**So Ordered.**

                                                /s/ Denise J. Casper
                                                United States District Judge